REPORTER.

| 37b 185|
12ap233|

WILLIAM A. REED, assignee of Asahel Gooding, *vs.* JAMES B. SANDS, impleaded with J. D. ADAMS.

Unless the assignor, in a general assignment of property for the benefit of creditors, could maintain an action upon promissory notes held by him, his assignee cannot recover thereon.

Such an assignee does not occupy the place of a *bona fide* assignee of the payee, in such a sense as to exclude the equities existing between his assignor and a surety in the notes.

Where promissory notes were signed by S. as surety for A., at the request of A. G., to be placed in the hands of G. G. as collateral security for G. G.'s liabilities as indorser for A. G., and under an agreement with A. G. that they should not be put in circulation, and not be held or used as surety to A. G.; *Held* that S. was a mere accommodation surety for A., and that neither A. G. nor his assignee in an assignment for the benefit of creditors, could recover on the notes, against S.

Where, in such an action, the plaintiff sued as "assignee of A. G.," and alleged

in his complaint that the notes had, for value received, "been duly transferred to and are the property of the plaintiff;" and on the trial he produced the notes (which were payable to A. G. or bearer) and read in evidence the general assignment from A. G. to himself, which was sufficient in terms to pass whatever interest or title the assignor had in the notes; *Held*, that this raised a strong presumption that he received the notes of A. G. by and through the assignment, and that he was bound to prove how he came by the notes, and to show a title to them through some other source.

THIS was an appeal from a judgment entered on the report of a referee. The action was brought by the plaintiff as holder, against the defendants as makers, of thirteen promissory notes for $1000 each, payable to Asahel Gooding, or bearer. Sands signed each note as surety for Adams, the other maker. In his complaint the plaintiff described himself as "assignee of Asahel Gooding," and alleged, in respect to each note—"which note, for value received, has been duly transferred to and is now the property of this plaintiff; and the whole amount of the same is due and unpaid to this plaintiff;" without setting forth his title more particularly. The defendant Sands, in his answer, alleged that the notes sued on were made and executed and indorsed to Asahel Gooding, in pursuance of a special agreement made by and between Asahel Gooding and Sands, as follows: the notes were to be by the said Asahel Gooding placed in the hands of one George Gooding, to be held by the latter as an indemnity against any liabilities he might incur by reason of being or becoming an indorser or surety for the said Asahel Gooding; and the notes were not to be used in any other manner, or for any other purpose whatsoever. That the notes were by the said Asahel Gooding, immediately upon the execution thereof, delivered to and placed in the hands of the said George Gooding, in pursuance of the agreement, and for the purpose aforesaid, and for no other use or purpose. That the notes, after they were so placed in the hands of George Gooding, and after they had been used for and had answered the purpose for which they were given, were surrendered up by George Gooding and redelivered to Asahel Gooding, who

held them without any consideration having at any time been paid therefor, and without having any interest therein. The defendant therefore denied that he was indebted to, or liable to pay, the plaintiff the amount claimed to be due on the notes, or any part thereof. He also denied that the notes, or any of them, had been, for a valuable consideration or otherwise, assigned and transferred to the plaintiff by Asahel Gooding. He also pleaded a set-off, in favor of Adams, against Asahel Gooding. The action was referred to a referee, to hear and decide the same. On the trial before the referee, the plaintiff proved the execution of the notes by the defendants, and the amount due thereon. He then produced, and read in evidence a general assignment from Asahel Gooding, of all his property for the benefit of creditors, to the plaintiff. This was in the usual form of instruments of that nature ; not mentioning the notes, particularly.

The referee found, and reported, the following facts : That the plaintiff was the holder of the notes described in the complaint; that they were given by the defendant Adams for a valuable consideration passing from the payee, Asahel Gooding; that James B. Sands, the other defendant, became a party to said notes as surety, under an arrangement made between him, Asahel Gooding and Adams, that the notes should be placed in the hands of George Gooding as collateral security for his liabilities as indorser for Asahel Gooding, and should not be put in circulation, and not held or used as surety to Asahel Gooding the payee, for the debt of Adams, for which he gave the notes. That although George Gooding delivered the notes temporarily to Asahel Gooding, for a particular object, that object not having been accomplished, and the notes having been returned to George Gooding, the latter never surrendered them, nor relinquished his right to hold them as available securities against his liabilities as indorser for Asahel Gooding. That George Gooding became fixed and liable as indorser for Asahel Gooding, to an amount far exceeding the aggregate amount of the notes.

As a conclusion of law, the referee found that the plaintiff was entitled to recover of the defendants the amount of the notes, with interest.

The defendant Sands appealed from the judgment entered upon the report.

*T. R. Strong*, for the appellant.

*James C. Smith*, for the respondent.

*By the Court*, WELLES, J. The plaintiff derives his title to the notes upon which the action is brought, from Asahel Gooding, his assignor. The allegation in the complaint, in each count or statement of a cause of action, is that the note mentioned in the count " for value received has been duly transferred to and is the property of the plaintiff," &c. The notes are all payable to Asahel Gooding or bearer. The plaintiff sues as assignee of Asahel Gooding. On the trial he produces the notes, and reads in evidence the general assignment to himself, of Asahel Gooding, which is sufficient in terms to pass whatever interest or title the latter had in the notes. This raises a strong presumption that he received the notes of Asahel Gooding, by and through the assignment, which is to be taken as the fact, until overcome by clear evidence to the contrary. He should be required to prove, at least, how he come by the notes, and to show a title to them through some other source. It is the legitimate inference flowing from the position in which the plaintiff by his pleadings and evidence has placed himself, that he came in possession of the notes from Asahel Gooding, and through his assignment. Unless, therefore, Asahel Gooding could have maintained an action on the notes, against the defendant Sands, most clearly the plaintiff could not. He does not occupy the place of a bona fide assignee of Gooding, in such a sense as to exclude the equities between his assignor and the defendant Sands.

It seems to me perfectly clear, from the report of the referee, that Asahel Gooding would not have been permitted to recover, laying out of view the assignment. The notes were signed by Sands as surety for the defendant Adams, at the request of Asahel Gooding, to be placed in the hands of George Gooding as collateral security for his liabilities as indorser for Asahel, and under an agreement with Asahel that they should not be put in circulation, and not be held or used as surety to Asahel Gooding. Sands was therefore a mere accommodation surety for Adams, on these notes. It would be monstrous, under these circumstances, to allow Asahel to recover on them. Instead of that, he was bound to protect Sands, against the notes. If the action had been brought by George Gooding the case would have been different, and I am not able to see, under the facts reported, or upon the evidence, why he would not be able to recover.

My opinion therefore is that the judgment should be reversed, and a new trial granted, with costs to abide the event.

The order of reference should also be set aside.

[MONROE GENERAL TERM, March 3, 1862. *Welles, E. Darwin Smith* and *Johnson,* Justices.]