FREDERICK A. CONKLING and others *v.* CHESTER F. SHELLEY,
Sheriff, &c.

A chattel mortgage of " all the dry goods, boots and shoes, millinery goods,
    and gentlemen's furnishing goods and stock in trade now in the store occu-
    pied by " the mortgagors, is neither fraudulent on its face nor invalid by
    reason of the generality and indefiniteness of the description.

It can be rendered sufficiently definite by evidence of the facts as to the
    goods in the store at the time, and will convey whatever in fact answers
    the description.

An agreement between a mortgagor and mortgagee of chattels that the
    former shall continue in possession, and that while thus in possession, he
    shall sell the goods, from time to time, and pay over the proceeds to the
    latter, is not unlawful, or fraudulent *per se.*

But in such a case the mortgagee makes the mortgagor his agent, and the
    latter's dealing with the property, under the agreement constituting him
    such, must be considered as the act of an agent and not of a mortgagor,
    and will affect his principal accordingly.

And the sales made, and proceeds received by the mortgagor, under such an

arrangement, should be applied in payment and satisfaction of the mortgage; whether the money is ever actually paid over to the mortgagee, or not.

THIS was an action of replevin. The plaintiffs claimed the property by virtue of a chattel mortgage made to them February 28, 1857, by Peter M. J. Mitchell and James H. Dewey, and the defendant justified his taking the property as sheriff, by executions upon judgments against Mitchell & Dewy. At the trial the plaintiffs introduced the mortgage. The property was described as "all the dry goods, boots and shoes, millinery goods, and gentlemen's furnishing goods and stock in trade now in the store occupied by the said parties of the first part, at the village of Niagara city." The mortgage recited the indebtedness of the mortgagors to the mortgagees, and conveyed the property for securing the payment thereof. The condition was for the payment of $2134.27 in three months with interest. In case of non-payment, the mortgagees were authorized to take possession, sell &c. So also if the mortgagees considered themselves unsafe, they might take possession and sell even before it was due. The defendant objected to the mortgage for insufficiency of description. The objection was overruled and the defendant excepted. The plaintiffs gave evidence of an agreement between their agent and the mortgagors, that the latter should sell the goods and remit the proceeds to the plaintiffs. It was proved that the mortgagors had sold more than enough property to satisfy the mortgage debt, and applied it to other claims, and there was conflicting evidence as to the consent of the plaintiffs to such application. The judge was requested to charge that the mortgage was void for uncertainty in its description of property. He declined, and the defendant excepted. He was requested to charge that the agreement that the mortgagors might sell, being then in possession, made the mortgage void. He declined, and left the question of good faith to the jury. The

defendant excepted. He was requested to charge that if sales had been made by the mortgagors to an amount sufficient to satisfy the mortgage, the plaintiffs could not recover. He declined and the defendant excepted. The plaintiffs had a verdict and judgment, which was reversed upon appeal, and a new trial ordered. From the order granting a new trial the plaintiffs appealed to this court and stipulated.

EMOTT, J. The case of *Gardner* v. *McEwen* (19 N. Y. Rep. 123) is in point to show that the mortgage held by the plaintiffs was neither fraudulent on its face nor invalid by reason of the generality and indefiniteness of the descriptions. It was a mortgage of "all the dry goods, boots and shoes, millinery goods, and gentlemen's furnishing goods and stock in trade then in the store occupied by" the mortgagors. This, although general, could be rendered sufficiently definite by evidence of the facts as to the goods in the store at the time, and would convey whatever in fact answered the description.

Where a mortgage contains a clause permitting the mortgagor not only to remain in possession, but to dispose of the mortgaged property at his discretion and apply the proceeds to his own benefit, it will be void as a fraud upon creditors. (*Edgell* v. *Hart*, 5 Seld. 213.) Where such agreement is made between the parties, outside of the mortgage but at the time of its execution, I should be inclined to agree with the idea expressed by Judge DENIO in *Edgell* v. *Hart*, and in *Gardner* v. *McEwen*, that it would invalidate the instrument, in the same manner as if it were written in its provisions. At all events it would be irresistible evidence of a fraudulent purpose. But this case differs from those in the very material fact that here the agreement was that the mortgagors, while permitted to continue in possession, might sell the mortgaged property, not for their own benefit, but for the mortgagees, accounting to them, and applying the proceeds of their sales to the sat-

isfiaction of the debt which the mortgage was given to secure. It was to be implied from the opinion in *Ford* v. *Williams*, (3 Kern. 577,) and was expressly decided in the same case in 24 N. Y. Rep. 359, that such an agreement is not unlawful or fraudulent *per se*. It is, I think, in this case open to no such exception. The agreement is, first, that the mortgagors should continue in possession; and next, that while they did so continue, they should sell the goods from time to time and pay over the proceeds to the mortgagees. The continuance in possession of the mortgagors is evidence of fraud, by the statutes, and, unexplained, is conclusive. But that is a question of fact, and was properly submitted to the jury. The further agreement, that while so in possession they should make sales of the property for the benefit of the mortgagees, was simply creating them agents to do what the statutes and public policy require mortgagees themselves to do, or to excuse themselves for not doing, viz. to make immediate and direct application of property of this description, tion when it is mortgaged, to the payment of the debt. If the retention of the possession by Mitchell & Dewy is explained and excused as consistent with good faith, which we must assume upon the verdict of the jury to be the fact, sales by them for the benefit of the mortgagees and in satisfaction of the debt, were neither a fraud nor an injury to other creditors, but the contrary.

But the Supreme Court reversed the judgment, and ordered a new trial in this case, on the ground that the sales made and proceeds received by the mortgagors, under such an arrangement between them and the mortgagees, should have been applied in payment and satisfaction of the mortgage, whether the money was ever actually paid over to the mortgagees or not. In this I think they were right. Such an agreement made the mortgagors agents of the mortgagees. Their possession and their sales were in effect those of the mortgagees. It was as if the latter had taken possession

and placed a third person in charge as agent to sell and account to them. They could not have escaped from crediting on their indebtedness the proceeds of sales made by such an agent, because he had fraudulently or dishonestly misapplied or employed the money. As far as this part of the transaction was concerned, Mitchell & Dewy were the agents and not the debtors or mortgagors of the plaintiffs, and their acts must be regarded accordingly. The case does not resemble that of a mortgagor of real estate who receives the rents and profits under an agreement to pay them over to the mortgagee. The mortgagee of lands has no fixed real right or title to their rents and profits, and could not be charged with them if the mortgagee should voluntarily agree to account for them and then fail to perform his agreement.

It is true that the execution creditors can only levy upon the interest of the mortgagee in the goods. But the extent or amount of that interest depends upon the amount due upon the mortgage. All that remains after satisfying the mortgage belongs to the mortgagor, and is subject to the executions, and must be applied upon the judgments in the sheriff's hands. It is not a question between the mortgagees and the mortgagors, who of course could not take advantage of their own wrong, and who remain liable to the plaintiffs for the money received and misapplied by them. But the question here is between the mortgagees and other creditors who have obtained a lien or an interest in the mortgaged property after the satisfaction of the mortgage. The mortgagees have made the mortgagors their agents, and their dealing with the property under the agreement constituting them such, must be considered as the acts of agents and not of mortgagors, and will affect their principals accordingly. The moneys received by them from sales were in legal effect received by the mortgagees, not because the sales were a fraud upon their creditors, but because they were made by authority and for the benefit of the mortgagees, and the mortgagors in making

them may be looked upon simply as their agents, as third persons would have been.

I agree with the view taken by the Supreme Court of this part of the case. Their order should be affirmed.

DAVIES, J. read an opinion in favor of reversal.

All the other Judges concurring with EMOTT, J.,

Judgment affirmed.