WM. F. RUSSELL AND OTHERS, ADMINISTRATORS, &c., OF JERE-
MIAH RUSSELL, DECEASED, v. DAVIS WINNE, APPEL-
LANT.

*Chattel Mortgage—Fraudulent Agreement—Sales by Mortgagor.*

An agreement between mortgagor and mortgagee that the former may
dispose of the mortgaged property to his own use, renders the mortgage
fraudulent as to creditors, whether the agreement be contained in the mort-
gage or otherwise.

Where the mortgagee of a chattel stipulates that the mortgagor may retain
possession of the mortgaged property, he assumes the burden of showing the
transaction to be made in good faith, and not to hinder, &c., creditors.

THIS action was brought to recover damages of the Defendant
for the alleged conversion by him of a quantity of stone. The
Plaintiff made title to the stone under a mortgage given to him by
one Woodward (who at the time owned the same) to secure the
payment of twelve hundred and thirty-one dollars and nineteen
cents, then justly owing by the latter to the former, payable on
demand, with interest, and described the property mortgaged as
follows: "All my flagging, curb, and bridge stones, also all my
platform, gutter, and coping stones, and all other stones belong-
ing to me, and all other goods and chattels, and now in my
yard, store, and dock at West Camp, and at Eve's Port, and at
Saugerties Landing, all in the town of Saugerties."

The mortgage contained a clause providing that the mortgagor
should continue in possession and the full and free enjoyment of
the property mortgaged, until default made in payment of the
sum thereby secured. The mortgage was dated January 27,
1862. The Defendant, who was Sheriff, made title by virtue of
three executions issued upon judgments of the Supreme Court
against Woodward, in June, 1862, and delivered to the Defend-
ant for collection, who levied the same upon the stone in question,
and also upon the goods in the store, and some other property,
and sold the same for the purpose of satisfying such executions.

It was proved upon the trial that, at the time of giving the mortgage, the mortgagor was engaged in buying and selling stone; that he also kept a store with a small stock of goods, which he sold at retail to such customers as called for them; that he continued, after giving the mortgage, to deal in stone as before; that he sold some of the stone mortgaged, but whether this was known to the mortgagee did not distinctly appear; that he also continued to sell goods from the store in like manner as before; and evidence was given tending to show that this was with the knowledge and assent, and in pursuance of an agreement with the mortgagee, and to apply the proceeds of such sales to his own use, with the like assent and agreement.

It was also proved that, after the levy upon the property by the Defendant, the Plaintiffs' intestate, to induce a postponement of the sale, gave to the Defendant an agreement to the effect that he would be responsible for the property and its production at the time fixed for the sale, and that in the meantime he would not interfere therewith, by virtue of the mortgage in question.

At the close of the evidence the Defendant's counsel moved to nonsuit the Plaintiff, upon the ground, 1st, that he was estopped by the agreement with the Sheriff; 2d, that the mortgage was fraudulent and void, for the reason that the mortgagor was allowed to retain and deal with the property as his own; 3d, that if the mortgage was fraudulent in part, by allowing the mortgagor to sell the goods in the store, it was thereby rendered fraudulent as to all the property covered by it. The motion was denied, and the Defendant's counsel excepted.

The Judge, among other things, charged the jury that the mortgage was void as to the goods in the store, as the mortgage contemplated the sale of these goods. The Court further charged the jury that this did not avoid the mortgage as to the residue of the property covered by it. To this latter portion of the charge the Defendant's counsel excepted. The jury found a verdict for the Plaintiff, upon which judgment was entered by order of the General Term of the Supreme Court, before which the exception

was ordered to be heard in the first instance, from which the Defendant appealed to this Court.

*John H. Reynolds* for Respondents.

*P. Cantine* for Appellant.

GROVER, J.—The agreement given by the Plaintiffs' intestate to the Defendant, upon the postponement of the sale by the latter, was not an estoppel upon the Plaintiff. It merely bound the intestate to take care of the property until the day of sale, and produce it at that time, and in the meantime not to interfere therewith by virtue of his mortgage. There was no agreement by the intestate to abandon his claim to the property, or concession of the right of the Sheriff thereto, and of course nothing done by the latter upon the faith of any such agreement or concession. The description of the property contained in the mortgage was sufficient to cover the stone, and also the goods belonging to the mortgagor in the store at the time. That description, after fully pointing out the stone mortgaged, proceeded as follows : "And all other stones belonging to me, and all other goods and chattels now in my store," &c., " all in the town of Saugerties." This embraces all the goods of the mortgagor in the store at the time (Conkling *v.* Shelley, 28th N. Y. 360). This brings us to the question, whether the Judge was correct in his charge to the jury, that the mortgage was void as to the goods in the store, as the mortgage contemplated the sale of those goods by the mortgagor, for his benefit.

This question is only material as affecting the validity of the mortgage as to the stone, as there was no claim made by the Plaintiffs on account of those goods, although sold by the Defendant on the same executions as the stones.

The Judge could not have referred to any clause in the mortgage authorizing a sale of the goods, as the clause in the mortgage giving the right of possession and use of the property to the mortgagor was equally applicable to the stone in question as to the goods.

He evidently referred to the proof showing the constant deal-

ings of the mortgagor in the goods, selling portions thereof, from time to time, as his own, for his own benefit, with the knowledge and assent of the mortgagee—thus evidencing an agreement that the mortgagor might so deal with the goods.

The Judge held that the evidence conclusively proved this, and hence his legal conclusion that the mortgage was void as to the goods, as against creditors. This legal conclusion only need be examined, as the evidence, if not conclusively showing the above facts, tended strongly in that direction, and should have been submitted to the jury, had it not been held conclusive by the Court. The question then is, whether an agreement by the mortgagee, made to the mortgagor, that the latter may sell for his own benefit, and as his own, portions of the property covered by the mortgage, renders the mortgage fraudulent and void as to such portions? It would seem that the bare statement of the proposition would be sufficient to warrant an affirmative answer. A creditor, for the purpose of securing a debt, has the right to take a mortgage upon chattels from his debtors, and leave the same in possession of the latter, upon assuming upon himself the burden of showing that the transaction was in good faith, and without any intent to hinder, delay, or defraud the creditors of the mortgagor, and by also complying with the other requisites of the statute. If there is an agreement by the mortgagee that the mortgagor may sell or dispose of any of the property for his own benefit, it is established conclusively that the mortgage was given for some purpose other than that of securing a debt to the mortgagee, or of giving him any real interest in such property.

It is evident that, as to such property, the mortgagee not having any real interest therein, such real interest remains in the mortgagor. Why, then, is the mortgage given upon such property? Evidently, the better to enable the mortgagor to enjoy the benefit thereof at the expense of creditors. Were there no creditors of the mortgagor, there would be no object in giving or taking mortgages accompanied with such an agreement. It is, I think, clear that such an agreement shows that the mortgage was not made in good faith, and without a design to hinder, &c.,

creditors. There is no question of intention to be submitted to a jury. It already appears that as to such property the mortgage was not designed by the parties as an operative instrument between them, and its only operation must be to the prejudice of others. The Court should, as to such property, pronounce it void, for the reason that the evidence conclusively shows it fraudulent. In Edgell v. Hart (5 Seld. 213), it was decided by this Court that an agreement contained in the mortgage, authorizing the mortgagor to sell the property for his own benefit, vitiated the mortgage, on the ground of fraud. Surely, the circumstance that the agreement was in the mortgage can make no difference. The effect is precisely the same, whether the agreement is contained in or made separate from the mortgage—whether its existence is proved by writing or otherwise. In all such cases the inquiry is, did it exist? and if so, the same judgment as to its effect should be pronounced. In Wood v. Lowry (17 Wend. 492) the same doctrine was applied when the agreement was not contained in the mortgage. This case, although overruled by Smith v. Acker (23 Wend. 653) upon another point, has never been as to the point now in question. The same rule was announced by Judge Denio in Gardner v. McEwen (19 N. Y. 123), although the point was not passed upon by the Court. So also Griswold v. Sheldon (4 Coms. 581); Conkling v. Shelley (28 N. Y. 360); Miller v. Lockwood (32 N. Y. 293), are not in conflict with, but tend to sustain the rule. It may therefore be regarded as settled, that an agreement between mortgagor and mortgagee that the former may dispose of the mortgaged property to his own use, renders the mortgage fraudulent as to creditors, whether the agreement be contained in the mortgage or not. It would seem to follow, that if such agreement as to the whole property covered by the mortgage avoided the entire mortgage, the same agreement as to a part of the property will avoid it as to that part. The only remaining question is, whether, if the mortgage be fraudulent as to creditors, as to a part of the property mortgaged, it can be upheld as to the residue? As applied to this case, if the mortgage be fraudulent and void as to the goods in the

store, is it valid as to the stone? The Judge charged that it was, thus sharply presenting the point. In this I think he erred.

The mortgage was one single instrument, given to secure one debt. To render it valid it must have been given in good faith; and for the present purpose of securing the debt, and without any intent to hinder or defraud creditors. This cannot be true when the object in part is, or as to part of the property, to defraud creditors. This unlawful design vitiates the entire instrument. The unlawful design of the parties cannot be confined to one particular parcel of the property. Entire honesty and good faith is necessary to render it valid; and whenever it indisputably appears that one object was to defraud creditors to any extent, the entire instrument is, in judgment of law, void. It is not at all analogous to a class of cases where it has been held that a part of an instrument itself, if valid, and not dependent upon other parts which are invalid, may be enforced. Here the fraudulent design, if it existed, destroys the foundation of the entire instrument. The Judge should so have instructed the jury. The judgment appealed from must be reversed, and a new trial ordered, costs to abide event.

WOODRUFF, J.—I think it entirely settled that if a mortgage be one which, by reason of the fraudulent purpose and intent with which it is executed, is declared *void* by statute, it is wholly void, notwithstanding it may include property as to which it would be valid, if it could be regarded as a mortgage of that only. To speak more clearly—if a mortgage be given with the fraudulent intent to cover up and conceal from creditors a portion of the debtor's property, it is altogether void, notwithstanding it also includes land or other property, in relation to which there is a bonâ fide intent to convey it as security for an honest debt, and no other purpose and intent. A mortgage void in part as a violation of the statute, is void altogether (Goodrich *v.* Downs, 6 Hill, 439; Grover *v.* Wakeman, 11 Wend. 194; Fulton Bank *v.* Benedict, 1 Hall, 480, 546; Jackson *v.* Packard, 6 Wend. 415;

Rice *v.* Welling, 5 Wend. 595; Hammond *v.* Hopping, 13 Wend. 505).

It follows that the instruction of the Judge to the jury, that as to the goods in the store the mortgage was void, involved the further legal consequence that it was altogether void.

If, therefore, the Appellant is entitled on this appeal to insist upon that instruction as the law in this case, he has a right therefore to claim that, as matter of law, his motion for a nonsuit should have been granted.

If the instruction had proceeded upon the assumption that the Defendant had shown, by *extrinsic proof*, that, in respect to the goods in the store, they were included in the mortgage with intent to cover them, and hinder and prevent their being taken by creditors, while the stone was in fact mortgaged in pursuance of a demand for security, and with bonâ fide intent that they should be held for that purpose, and no other, then we could not, on exception, examine the facts to see whether that fraud was sufficiently established. But when it appears that the Judge pronounced the instrument void on *its face*, because the mortgage itself " contemplated the sale of the goods in the store," we are at liberty to examine and see whether he gave a correct legal construction to the mortgage, and if not, then, obviously, such instruction, by itself, did not prejudice the Defendant, and we might disregard it and determine the case on the other question raised. So far from this instruction being of prejudice to the Defendant, it was altogether in his favor, because, having told the jury that the mortgage was void as to the goods, he also told them that they might take that fact into consideration in deciding as to the honesty and good faith of the mortgage.

I think, however, that neither the mortgage nor the evidence warranted any such peremptory instruction. A stipulation that, until default, the mortgagor may remain in the full and free possession, and in the full and free enjoyment of the goods, not only is not an authority to sell, but rather excludes such an idea.

No direct proof was given of any express contemporaneous agreement that the mortgagor might sell the goods.

The circumstance that the Plaintiff was at the store once after the mortgage was given, and saw, or most probably saw, sales taking place, was at most a circumstance to be submitted to the jury as evidence of such prior agreement contemporaneous with the execution of the mortgage.

If it was a sale in violation of the rights of the mortgagee, or even if it was consented to after the execution of the mortgage, it would not make the mortgage void; it would do no more than discharge the lien on the goods which he consented might be sold.

But I think that the Defendant was entitled to submit to the jury the question, whether it was not, according to the agreement, the intention of the parties that the mortgagor should sell the goods in the store, and appropriate the sales to his own use? And if so, then the instruction requested that if, for this reason, the mortgage was void as to the goods, it was void also as to the other property, should have been given.

The mortgaged property was left in the possession of the mortgagor. He was a storekeeper, and the goods mortgaged embraced all his stock in trade—"all other goods and chattels now in my store." The mortgagor continued his business, selling goods and buying others, without keeping any separate account of sales of mortgaged goods. He did not pay over the proceeds to the mortgagee. The man whom he employed "traded and got goods after the mortgage was given." The Plaintiff, when he took the mortgage, did not visit the premises, or take any means of identifying the goods then in the store, so that he might distinguish them from any others which might be purchased by the mortgagor; nor does anything indicate that he did not suppose that the business of selling and "trading" would go on as theretofore; and on the contrary, when he did go to the place, after the mortgage was given, he found the store open, and the clerk in attendance, and does not appear to have made any objection, or even inquiry. If this does not amount to express proof that he thereby knew that sales of the mortgaged goods were in progress, and the business was carried on without any regard to the mortgage, it certainly points strongly in that direction.

Now, I think it clear that if the only issue in this case had been, was this mortgage delivered and received upon an understanding, and with the intent, that the mortgagor should continue to deal with the goods in the store as his own, "trading" with them and selling as opportunity offered, and appropriating the avails to his own use? and the jury had found in the affirmative on that issue, their verdict could not be declared without sufficient evidence to support it. If not, then the mortgage being altogether void, if void as to the goods, for the reason so found, the Defendant was entitled to the instruction asked, to have the jury pass upon the question. Upon this ground I think the judgment should be reversed, and a new trial granted.

All reverse, except MILLER, J., not voting.

Reversed.