Bradley, J.
The plaintiffs were judgment creditors of the defendant, Edward P. Karr, and levied an execution upon a stock of goods, which were covered by a chattel mortgage made by Karr to the defendant Dildine. This action is brought in aid of the execution, and the injunction in question was granted to restrain the defendant Dildine from selling the property. His motion to dissolve the injunction was denied, and he appeals. To justify the granting of an injunction order it must appear by the complaint that the plaintiff is entitled to a judgment restraining the commission or continuance of an act the commission or continuance of which, during the pendency of the action, would be an injury to the plaintiff (Code Civ. Pro. § 603), or by affidavit, that during its pendency the defendant is doing, procuring, or suffering to be done, or threatens, or is about to do, or to procure, or suffer to be done, an act in violation of the plaintiff’s rights respecting the subject of the action, and tending to render the judgment ineffectual. Id., 604. The application, under section 603, depends upon the nature of the action, and requires for its support a *165 "complaint by which it must appear that the plaintiff: is entitled to a judgment giving the restraining relief. McHenry v. Jewett, 90 N. Y., 58; Roosevelt v. Edson, 19 J. & S., 227.
And while the application, provided for by section 604, does not require a complaint, yet if it is founded in whole or in part upon it verified, the' inquiry is properly involved whether, upon the facts alleged, it appears that the plaintiff is entitled to judgment.
And when the injunction has been granted without the aid of the complaint such question may be presented and considered upon a motion to vacate, after the complaint appears in the action and founded upon it. Id., § 628.
And unless it appear that the plaintiff is entitled upon the facts alleged, and stated on his part, to judgment for some relief in the action, the injunction is not supported. Buffalo Grape Sugar Co. v. Alberger, 22 Hun, 349.
It appears that a mortgage bearing date, February 13, 1886, was made by Karr to the defendant Dildine upon the goods in question,, to secure the payment of $1,540, payable in monthly payments of fifty dollars each, and interest on the whole sum unpaid, until April 13, 1886, when the full amount of the balance should become due. And that on April 12, 1886, the defendant Dildine took the property into his possession pursuant to the power given him by the terms and apparent legal effect of his mortgage. The complaint alleged that after the defendant had taken possession of the property, the execution issued April 19, 1886, upon their judgment against the mortgagor was levied upon the goods, and that notwithstanding the levy, the defendant Dildine has advertised for sale, .and is about to sell the property on his mortgage.
It is also alleged that in May, 1884, Dildine sold his stock of goods and fixtures in store to Karr for $4,000, and took from him a mortgage on the property for $2,500 of the purchase money, that amongst other things the chattel mortgage provided that the “ mortgagor has the privilege of selling all of said property except the fixtures for cash and on credit on reasonable time and to good responsible parties on time and credit, the mortgagor to apply on the mortgage, and to receive and apply the entire proceeds of said sales, both cash and credit upon the debt secured by the mortgage, to have the privilege and may use a part of the proceeds of the sales of said property to replenish this stock with other goods of like character and value, the stock so purchased and substituted in the place and stead of those which were sold to procure in, and the proceeds of the sales of the stock so bought to replenish, also to be a part, and received and applied in the payment upon the *166 debt which this mortgage is given to secure, and this substituted property to be placed by renewals once in sixty' days of the mortgage in the room and stead of those which the property was sold to procure,” that the moitgagor did make to the mortgagee a renewal mortgage at the expiration of each sixty days thereafter, which was immediately filed in the town clerk’s office; that each of them contained like provisions, and that the last renewal was the mortgage before mentioned of date February 13, 1886.
Assuming, as we must upon the affidavits, that the debt secured by the original mortgage was a valid one and the security taken in good faith, the provisions referred to of the mortgage did not render it fraudulent per se as against the creditors of the mortgagor. The relation given to the mortgagor and taken by him was that of agency for the mortgagee in making the sales, and may be so treated as against the creditors of the former.- Conkling v. Shelley, 28 N. Y., 360; Brackett v. Harvey, 91 id., 214.
The plaintiffs further allege, upon information (derived from Iiarr) and belief, that during the time Karr carried on business, he bought and sold large quantities of goods, on which he made large profits, and that his sales the past year amounted to about $10,000; that a large portion of the proceeds of such sales were neither applied in payment of the mortgage or used to purchase other goods to replenish the stock, but that such profits and proceeds of sales were applied to the personal use and benefit of the mortgagor, and that the mortgagee knew that he so used and disposed of a portion of the profits for his own personal benefit, and agreed and consented thereto.” And the statement of this fact is repeated in the affidavit of the plaintiff’s attorney, as upon information derived from Karr.
It is also alleged in the complaint that $700 or $800 of debts exist for goods sold by him on credit, during the time he carried on the business, which Dildine refuses to apply on the mortgage debt; that about $1,500 of the amount of the goods in question were purchased by the mortgagor on credit; and upon information and belief, that he is insolvent and has no other property out of which to satisfy the plaintiff’s judgment.
This action in aid of the outstanding execution cannot be supported unless the mortgage is fraudulent as against creditors of the mortgagor, or unless the mortgage debt has been paid, as otherwise the mortgagee, having taken, was in the lawful possession of the property before and at the time of the levy of the execution, and there was then no leviable interest which could be charged by such levy, or by which the lien of the execution could be supported. *167 Mattison v. Baucus, 1 N. Y., 295; Hall v. Sampson, 35 id., 274.
There is no direct allegation or statement in the complaint, or in any affidavit, that the mortgage was taken with any intent to defraud the creditors of the mortgagor; and after a careful examination of the verified complaints on which the injunction was granted, and the supplementary affidavit used in opposition to the motion to vacate it, we think that sufficient does not appear to justify the inference of any understanding when the mortgage was made, that the mortgagor should be at liberty to appropriate to his own use and purposes any of the proceeds of the. mortgaged property, and the conclusion is required that the mortgage was valid in its inception as against creditors. The fact of such an understanding must be made to appear by a statement of facts which fairly establish or justify an inference to that effect. Brackett v. Harvey, 91 N. Y., 214. In Southard v. Benner (72 N. Y., 424), and Potts v. Hart (99 id., 168), there was no authority vested in the mortgagor to sell the property and apply the proceeds on the mortgage.
And no relation of agency as against the creditors of the mortgagor, between him and the mortgagee in that respect.
And in the latter case, Judge Earl, speaking for the whole court, remarked, that no just inference could be drawn that the mortgagees expected the mortgagor ‘‘to apply the proceeds of their sales upon their mortgage. ” There is no allegation, nor is it claimed that the mortgage was fully paid. It follows that for the purposes of the remedy of his creditors the interest of' the mortgagor was merely equitable at the time of the levy.
The allegation of the complaint is that Karr had an equitable interest in the property. And they, amongst other relief, ask the direction that the proceeds of sales made by the mortgagor of the mortgaged property, of which no application has already been made, be applied upon the mortgage debt.
They also allege that the property has a value much in excess of the amount due on the mortgage. The facts as alleged by the plaintiffs seem to go in support of an equitable remedy and relief. But to support an action to reach equitable interests or assets which are not the subject of levy and sale by execution, the remedy at law by its ordinary process must be first exhausted. This can be evidenced only by the return of execution unsatisfied, which for the purposes of such equitable remedy is a condition precedent. Estes v. Wilcox, 67 N. Y., 264; Adee v. Bigler, 81 id., 349. These views lead to the conclusion that the *168 order should be reversed, and the motion to vacate the injunction order granted.
Angle and Childs, J J., concur.