S. C. WEILL, Receiver, v. THE FIRST NATIONAL BANK.

*Receiver — Mortgage — Discharge and Satisfaction — Novation — Principal and Agent — Payment.*

Plaintiff, as receiver of the property of two judgment debtors constituting a firm, brought an action for the value of certain of their personal property, sold by defendant under a mortgage by the terms of which one of the mortgagors was appointed agent to take possession for mortgagee and sell and apply proceeds to the discharge of a debt due to defendant mortgagee. The agent and mortgagor sold the property and deposited proceeds in defendant bank, in the name of their firm, more than sufficient to discharge the mortgage debt: *Held—*

1. That either, or both, such payments were a valid discharge of said mortgage debt.

2. The sale by the agents of goods sufficient to discharge the debts was, in fact, a discharge, there being no change or modification of the contract.

3. If the agents, mortgagors, took and used the money with the consent of the mortgagee, it constituted a new debt, but it was not embraced by the mortgage, and not collectable under it.

106—1

4. The new debt could not be a renewal of the mortgage, because it had been discharged.

5. The money received by the agents, mortgagors, was, in legal effect, received by their principal, the mortgagee.

6. A receiver may bring an action without special leave of the Court.

This was a CIVIL ACTION, tried before *Bynum, J.*, at the Fall Term, 1890, of NEW HANOVER Superior Court.

In proceedings supplementary to the execution, on the 24th of January, 1888, the plaintiff was appointed receiver, and he brought this action on the 4th of April, 1888, to recover the value of certain personal property of the judgment debtor, which the defendant claimed, by virtue of a deed of mortgage, executed on the 16th of April, 1879, to it by the judgment debtors mentioned, to-wit, D. A. Smith and T. C. Craft, trading as D. A. Smith & Co., which deed purported to convey to the defendant a stock of "furniture, goods, wares and merchandise," specified by schedule, to secure three promissory notes for borrowed money, aggregating $3,000, coming due, respectively, at sixty, ninety and one hundred and twenty days. This mortgage was proven and registered on the 17th of April, 1879. The following is so much thereof as need be reported:

"To have and to hold the said furniture and merchandise to said party of the second part, them and their successors: *Provided, nevertheless,* and this deed of conveyance is made upon the following conditions, stipulations and agreements, to-wit: That the said furniture and merchandise hereby conveyed, or intended to be conveyed, shall be, and is, from the date of these presents, delivered unto the possession of the said party of the second part, and that Thomas C. Craft, of said city of Wilmington, is hereby appointed the agent of the said parties of the second part to receive and retain such possession for the said parties of the second part, and is authorized and empowered as such agent only, to sell and dispose of the said furniture and merchandise from

time to time, and appropriate the proceeds of said sale to the payment of said three notes, or any other notes that may be given in renewal or substitution of the same, with the interest thereon, and the said agent shall, at least once in every month, so long as he shall continue to act as agent aforesaid, render a full, fair and complete account in writing of all sales of said furniture and merchandise by him sold, whether for ready money or upon a credit, and deliver to the said party of the second part all such proceeds; and it is further understood and agreed that said agent shall keep, in books for that purpose, a complete and accurate account of all sales by him made as aforesaid, which books of·all kinds, in any way relating to the conduct of such sales, shall be at all times open to the inspection and examination of the party of the second part, or any agent or attorney it may designate for that purpose; and in like manner, the said party of the second part, by its agents and attorneys, may examine at all times the said furniture and goods, and for that purpose may enter into the said stores at any time. And it is further expressly understood and agreed between the parties hereto that the said party of the second part may at any time, when it shall be so minded, remove the said agent hereby appointed, and nominate and constitute some other agent or agents," &c., &c.

The defendant denied most of the material allegations of the complaint.

The parties waived a trial by jury and the Court found the facts; the part of the findings of fact necessary to be reported are as follows:

"First. That on the 16th day of April, 1879, D. A. Smith & Co., composed of D. A. Smith and T. C. Craft, were merchants, doing business in the city of Wilmington, N. C. That on the said date they borrowed from the defendant corporation the sum of three thousand dollars, and to secure the payment of the same, executed the mortgage

attached to this statement, the same having been registered in the records of New Hanover County, on the 17th of April, 1879. That on the date of said mortgage, the value of the stock of merchandise owned by the said D. A. Smith & Co. was about six thousand dollars. That previous to the execution of said mortgage, D. A. Smith & Co. had been depositing their funds with the defendant corporation. That from the date of said mortgage up to the 24th of February, 1881, T. C. Craft, agent of the said defendant corporation, continued to deposit with the defendant the funds arising from the sales of the goods and merchandise of D. A. Smith & Co, in the name of D. A. Smith & Co., just as they had been doing before, and to draw checks on the bank in the name of D. A. Smith & Co., the said money paid on said checks being used in carrying on the business of D. A. Smith & Co., as had been done by them previous to the date of the mortgage; that the checks were filled out by the said Craft and signed by Smith for D. A. Smith & Co.; that the said firm bought goods in the name of D. A. Smith & Co., and sold them as such; that the said firm of D. A. Smith & Co. was solvent on the day of the execution of the mortgage; that the three thousand dollars was borrowed from the defendant corporation by D. A. Smith & Co. to enable them to pay some debts due by them, and to enable them to buy more goods.

"Second That said Craft, from the date of said mortgage up to the 24th of February, 1881, paid none of the principal of said debt, but did pay some interest.

"Third. That on the 24th of February, 1881, the defendant corporation required the said Craft to make his deposits in the name of T. C. Craft, agent, and so continued to some time in February, 1883, when the said Craft retired from the said firm; that from said 24th of February, 1881, until February, 1883, when said Craft retired, none of the deposits made with the defendant corporation were applied on the

mortgage debt, but the deposits were used by Smith & Co., in running the business of D. A. Smith & Co., with the consent of the bank; that when Craft left the firm of D. A. Smith & Co., in 1883, the firm was doing a good business, and in good condition.

"Fourth. That when Craft left, in February, 1883, J. I. Macks was appointed agent of the defendant, and continued to act as such until the closing out of the business of D. A. Smith & Co., in October, 1885.

"Seventh. That from the date of said mortgage, made by D. A. Smith & Co. to the defendant corporation, on the 16th of April, 1879, to February 24th, 1881, there was deposited with the said defendant by T. C. Craft, as agent for the bank in the name of D. A Smith & Co., $33,270.42.

"That the said T. C. Craft, from the 24th of February, 1881, to __ day of February, 1883, deposited, as agent, $58,080 15; that from the said __ day of February, 1883, to October 7th, 1885, J. I. Macks deposited, as agent, the sum of $1,500; that none of the above sums were applied to the payment of the mortgage debt, except the sum of $1,500, deposited by the said Macks, but all was used by D. A. Smith & Co. and D. A. Smith in running their business. From February, 1883, to October, 1885, enough was collected to have paid the mortgage debt, if it had been so used.

"That the principal deposits made with the defendant, in the name of D. A. Smith & Co. and T. C. Craft, agent, arose from sale of the merchandise of D. A. Smith & Co., but there was included in said deposits all the moneys of D. A. Smith & Co. from all sources.

"Ninth. That at the time of the execution of the said mortgage there was an outstanding judgment against the said D. A. Smith for $150, which was paid about October, 1879; that about two years subsequent to the said mortgage several judgments were taken against said Smith, which were also compromised and paid about a year afterwards; that in December, 1881, a judgment was obtained against

Smith, Craft and one King for ninety dollars, which is not yet paid.

"Tenth. It is admitted that at the time of the execution of said mortgage there was no actual intent, on the part of either the said bank or said D. A. Smith & Co., in executing the same, to hinder, delay or defraud any of the creditors of D. A. Smith & Co.

"Eleventh. It is admitted that the value of the property taken and sold by the bank, under its said mortgage, was $972.20, and the value of that portion of said stock of goods of said Smith which was sold, as aforesaid, under execution in favor of the bank by the Sheriff was $363.38."

The Court gave judgment as follows:

"This action having been brought to trial by the Court, a trial by jury having been waived and the Court, by consent of the parties, having found the facts, the Court doth adjudge and decree, on the facts as found, that the plaintiff do recover of the defendant the sum of nine hundred and seventy-two dollars and twenty cents ($972.20), being the value of the goods contained in the mortgage, and his costs of suit, to be taxed by the Clerk of the Court."

After the facts were found by the Court, the defendant moved to dismiss the action, upon the ground that the receiver had no leave to sue, and could not maintain the action without such leave of the Court.

Motion overruled, and defendant excepted, and appealed.

*Mr. J. D. Bellamy*, for plaintiff.
*Mr. Junius Davis*, for defendant.

MERRIMON, C. J.: In our judgment, the debt of the mortgagors, in favor of the defendant and secured to it by the mortgage mentioned, was discharged several years before this action began, and hence the claim of the defendant to the property in controversy is unfounded. This appears

from the purpose of the mortgage, its terms, the stipulation contained therein, the facts found by the Court, and the legal effect of the whole taken together.

The purpose was to secure the payment of the three notes specified. To that end, the property was delivered to the possession of the defendant, and its particularly designated. agent was "to receive and retain such possession" for it, and he was "authorized and empowered as such agent only to sell and dispose of the said furniture and merchandise from time to time, and appropriate the proceeds of said sales to the payment of said three notes, or any other notes that may be given in renewal or substitution of the same, with the interest thereon." The property was thus to be sold and the proceeds of sale to be applied at once—not at some indefinite time in the future—to the payment of the notes. It was not made necessary after such sales to obtain the assent, or consent, of the mortgagors to such appropriation; such consent had already been given by the express terms of the agreement. The agent received the money, proceeds of such sales, not to hold the same for the mortgagors or to await something to be done by them, but solely for the defendant, and in payment of so much of the mortgage debt as it was sufficient to discharge, whether proper credits were entered or not. The money so received, the contract at once appropriated it, certainly in the absence of modification of that contract. There was no agreement in terms, or appearing by implication, in the mortgage deed, that the mortgagors might use the proceeds of such sales from time to time, and indefinitely; nor, so far as appears, was there any oral agreement to that effect, if such agreement could at all modify or change the material provisions of the mortgage deed. The debts once discharged could not be revived as a mortgage debt secured by that mortgage.

If the mortgagors took and used the money, the proceeds of such sales, after the agent so received the same, in dis-

charge of the mortgage debt, with the assent of the defendant, they became indebted to it on a new account, but such new indebtedness was not embraced by the mortgage. The new debt could not be treated as a "renewal" of the mortgage debt, because that debt had been discharged. The contract embodied in the mortgage deed plainly did not contemplate that the mortgagors should use the proceeds of the sales of the goods as they did do. On the contrary, there was a studied purpose to prevent them from controlling the property or using the money. It was expressly and carefully provided that the defendant's agent should have its possession of the property—that he should sell it and receive the money for the purpose of paying the notes, and no other.

This case is much like *Mingus* v. *Wright*, 3 Dev., 78, in which this Court said: "Upon the second point, the defendant offered to show that the principal debtor in the two notes had placed property in the hands of the plaintiff as trustee to sell and raise money and pay the two notes, and furthermore, that he had sold the property and raised from the sales money sufficient to discharge them. We are unable to see upon what grounds this evidence could be legally rejected. The plaintiff being the holder of the notes, and at the same time trustee to sell property placed in his hands expressly to discharge the notes, it does seem to us that when he did sell and receive the money, it was immediately a payment of the notes." *Strayhorn* v. *Webb*, 2 Jones, 199; *Williams* v. *Whiting*, 92 N C., 683.

The counsel for the appellee cited *Conkling* v. *Shelly*, 28 N. Y., 360, which is much and strongly in point here. In that case, the Court said: "But the Supreme Court reversed the judgment and ordered a new trial in this case, on the ground that the sales made and the proceeds received by the mortgagors, under such an arrangement between them and the mortgagees, should have been applied in payment and

satisfaction of the mortgage, whether the money was actually paid over to the mortgagee or not. In this, I think they were right. Such an agreement made the mortgagors agents of the mortgagees. Their possession and their sales were, in effect, those of the mortgagees. It was as if the latter had taken possession and placed a third person in charge to sell and account to them. They could not have escaped from crediting on their indebtedness the proceeds of the sales made by such an agent, because he had fraudulently or dishonestly misapplied or employed the money. * * * It is not a question between the mortgagees and mortgagors, who, of course, could not take advantage of their own wrong, and who remain liable to the plaintiffs for the money received and misapplied by them. But the question here is between the mortgagees and the creditors, who have obtained a lien or an interest in the mortgaged property after the satisfaction of the mortgage. The mortgagees have made the mortgagors their agents, and their dealings with the property under the agreement constituting them such must be considered as the acts of agents, and not of mortgagors, and will affect their principals accordingly. The moneys received by them from sales were, in legal effect, received by the mortgagees," &c. *Chester* v. *Stephens,* 3 Denio, 33; *Braghman* v. *Done,* 69 N. Y., 69; *Hunt* v. *Nevers,* 15 Pick., 500.

It clearly appears, from the facts found by the Court, that the agent of the defendant sold the mortgage property and received the money therefor, greatly more than sufficient to pay the mortgage debt, and thus, as we have seen, it was, in legal effect, discharged. The defendant must be treated as having received the money, through its agent.

No reason was assigned, on the argument, why the plaintiff may not maintain this action as receiver, without special leave of the Court to sue, nor can we see any. The Court made an order in the proceedings supplementary to the execution, appointing the plaintiff receiver, "to take charge

and custody of all property, choses in action and things of value of said defendants, with all the rights, powers and privileges of a receiver under the law." *The Code,* §§ 494, 497; *Coates* v. *Wilkes,* 92 N. C., 376.

While the Court may exercise very great control over the receiver, and may direct, in appropriate cases, that he shall or shall not do particular things, yet, ordinarily, when he is invested with full power as a receiver, he will have authority to bring appropriate necessary actions without special leave or direction of the Court.

Affirmed.