GEORGE R. CORNWELL, as Assigneee for the Benefit of Creditors of EDSON POTTER and Others, Respondent and Appellant, *v.* BALDWIN'S BANK OF PENN YAN, Appellant and Respondent.

*A statement of book accounts is not a pledge of them — responsibility of a creditor for moneys collected by an agent (the debtor) of the creditor and not paid over to the creditor — right of an assignee for creditors to insist upon it.*

An instrument of transfer of book accounts by debtors to their creditor, a bank, constituted the debtors the agents for the bank to collect the accounts, and on the tenth day of each month, out of such collections, or otherwise, to pay a certain sum to the bank, and to assign to the bank such new accounts as should accrue to them from their customers so as to maintain and keep good the proportion originally existing between the indebtedness to, and the collateral security of, the bank. The debtors presented to the bank, monthly, a statement of new accounts which was merely a copy of the original entries contained in their books, and subsequently made an assignment for the benefit of creditors.

*Held,* that the assignee for the benefit of creditors was not in a position to insist
that moneys collected from the assigned accounts by the debtors, as agents of
the bank, and not paid over to the bank, should nevertheless be considered
as applied in reduction of the bank's claim.

*Semble,* that a judgment creditor of the assignors might insist upon such applica-
tion being made;

That the statements of new accounts did not pledge the accounts described in
them, and that the bank was not entitled to the moneys which had been collected
upon these new accounts, as against an assignee for the benefit of creditors of
the debtors who made the statements to the bank.

APPEAL by the plaintiff, George R. Cornwell, as assignee for the
benefit of creditors of Edson Potter and others, from so much of a
judgment of the Supreme Court, entered in the office of the clerk
of the county of Yates on the 13th day of May, 1896, upon the
decision of the court rendered after a trial at the Yates Equity
Term as adjudges:

That the said assignment of date of July 24, 1895, made by Pot-
ter, Kinne & Kendall to the defendant was made in good faith for
the security of the promissory notes therein mentioned, and was not
nor is not fraudulent as against the creditors of said assignors.

Also, that the collection made by the said assignors of the
accounts assigned to the defendant, pursuant to the provisions of the
instrument of assignment, authorizing them to do so for it, is not
available to the plaintiff to charge the defendant with the amount
so collected by the assignors pursuant to the authority thus con-
ferred upon them.

Also, that the defendant is entitled to the benefit of the assign-
ment of date of July 24, 1895, to it for the purpose of the collec-
tion by it of the accounts thereby assigned to an amount not exceed-
ing that remaining unpaid of the indebtedness to secure the pay-
ment of which that assignment was made.

Also, that said plaintiff appeals from that portion of said judg-
ment awarding to the defendant judgment against said plaintiff in
the sum of $789.90, being the amount collected by the plaintiff of
the accounts assigned to said defendant by the assignment of date
July 24, 1895, and awarding to the defendant its costs and disburse-
ments of said action.

Also, an appeal by the defendant, the Baldwin's Bank of Penn
Yan, from so much of said judgment as adjudges: That, subject

only to the right given by the defeasible title taken by the defend-
ant by the assignment of the date July 24, 1895, the plaintiff,
by the general assignment to him, took title to the accounts which
accrued to the assignors, Potter, Kinne & Kendall, after the 12th
day of July, 1895, and none other than those included in the said
assignment to the defendant of date July 24, 1895, were at any
time assigned to the defendant; and that the said defendant neither
acquired, nor has any interest in or claim upon, any of the accounts,
except those set forth in the schedule attached to said assignment
bearing date July 24, 1895 ; that by the assignment of date Decem-
ber 4, 1895, the plaintiff took title to all of the accounts then
remaining unpaid which accrued to the assignors, Potter, Kinne &
Kendall, subsequent to the 12th day of July, 1895, or at any other
time, except those included in the said assignment to the defendant
of date July 24, 1895 ; that the defendant's officers, agents, attor-
neys and employees be, and hereby are, and each and every of
them is, forever restrained and enjoined from collecting or receiv-
ing payment of the accounts which accrued to the plaintiff's assignors,
Potter, Kinne & Kendall, subsequently to the 12th day of July,
1895, or from interfering in any way or manner with the plaintiff
in the collection thereof, or from proceeding or attempting to pre-
vent the payment to the plaintiff of the same, by any person or
persons owing the same.

*Huson & Dwelle*, for the plaintiff.

*M. A. Leary*, for the defendant.

Judgment affirmed, with costs, on the opinion of BRADLEY, J.,
delivered at Special Term.

All concurred.

The following is the opinion of BRADLEY, J. :

BRADLEY, J. :

On the 4th of December, 1895, the members composing the firm
of Potter, Kinne & Kendall, and as such, made to the plaintiff a
general assignment for the benefit of their creditors. At that time
the assignors were insolvent. Their liabilities then amounted to

$133,315.33, and, while the nominal value of their assets was $113,389.22, the estimated actual value of them was $98,126.40.

On the 24th day of July, 1895, they owed the defendant $16,625, represented by their notes. The plaintiff's assignors then made and delivered to the defendant a transfer of accounts, as per schedule thereto annexed, of the nominal amount of $20,391.07, as collateral security for the payment of such notes and any renewal thereof. This instrument of transfer contained the provision that "It is understood that said first parties are to act for said bank in collecting said accounts until such time as the authority hereby given shall be countermanded. And the said parties of the first part hereby severally agree to pay upon the above indebtedness, through the collection of said accounts or otherwise, at least the sum of $1,000 upon the tenth day of each and every month hereafter, until said indebtedness, said notes, and all renewals thereof, shall have been fully paid." It also provided that the amount of the accounts which the bank should hold by assignment from the firm as collateral security should continually, until payment of the indebtedness, bear to it the same proportion given by the transfer first above mentioned, and that, in order to carry into effect such understanding, the assignors agreed that they would, on the tenth day of each month, until such indebtedness was paid, make an assignment to the defendant of such new accounts as should accrue against persons making purchases of them, "so as to maintain and keep good the proportion aforesaid between the indebtedness and the collateral security." They also agreed to present the defendant, on the tenth day of each month, a written statement of such of the accounts assigned as had been paid.

They did deliver to the defendant monthly statements or schedules of accounts, but made no assignment to it subsequently to that of the 24th of July, 1895. The provisions before mentioned indicate that it may have been contemplated that all the moneys collected by the assignors upon the accounts so assigned might not be paid over to the defendant, else the provision for subsequent transfers to continue the proportional relation between the indebtedness and security would seem to have no substantial significance. It is, therefore, urged, on the part of the plaintiff, that there was an understanding between the parties to the instrument that the assignors might appropriate proceeds of those accounts, or some part thereof,

to their own use. But there is no agreement of permission to that effect expressed in the instrument, and none will be inferred unless fairly required by the evidence. (*Brackett* v. *Harvey*, 91 N. Y. 214.)

And it may be observed that the agency of the assignors to make collections for the defendant relates to the entire accounts assigned up to the amount of the indebtedness to it.

In that view it is not essential to the validity of the instrument of transfer that they pay over to the defendant the full amount collected. By the terms of the instrument no transfer of the monthly accounts to the defendant was expressed, but it seems to have been contemplated that the assignment of them would subsequently be made.

The maxim in equity, that what is agreed and ought to be done is deemed performed, is available only when good conscience requires its application. Whatever view might be taken of it, if no rights other than those of the assignors were involved, the interests of the creditors adverse to those of the defendant are not to be overlooked. The provision for subsequent assignments of accounts does not seem to have been made to supply any deficiency in the amount of those included in the assignment of July twenty-fourth, but to preserve the relative proportion of the security furnished by it to the debt owing to the bank. The apparent reason for this was in the apprehension that the assignors, by reason of the permission given them to collect the assigned accounts, might appropriate some of the proceeds to their own use. This, certainly, as against the other creditors, cannot be deemed conscionable, just or allowable.

It appears that the large portion of the debts which the assignors owed other creditors at the time that the assignment to the plaintiff was made existed at the time of such transfer to the defendant, in July, 1895.

The view here taken is that the monthly statements of accounts cannot be deemed to have been assigned to the defendant, and that they did not become available to it as security for the payment of the indebtedness of the firm to the bank. The delivery of the schedules of accounts on the books of the assignors constituted no pledge in the legal sense of the term.

A pledge is a bailment of personal property as security. The entries of account in a book kept by the creditor purport to charge

the debtors with the amount. The property in such case is only in the liability of the persons who are debited in the account. In the present case the books containing the original entries were retained in the possession of the firm. When the debtor has furnished evidence of his liability by note or by acceptance of a bill, or in any other legitimate manner, the chose in action may be the subject of bailment and pledge, as may also be a certificate of stock. The requisite quality of personal property to become a pledge by delivery does not exist in a mere copy of an account, taken from the books of the person to whom it accrued, against another.

After the assignment of July twenty-fourth was made to the defendant, and prior to December 4, 1895, the assignors collected of the accounts so assigned $11,973.21, of which they paid over to the defendant $3,985. Since the assignment to the plaintiff he has collected of those accounts $789.90, and the defendant has received on the accounts the further sum of thirty-eight dollars and twenty-seven cents ($38.27). The amount collected and received by the assignors of those accounts assigned to the defendant in excess of the sum paid by them over to it is $7,988.21.

The question, therefore, arises whether or not, as against the plaintiff, the defendant is chargeable with the moneys so collected and retained by the assignors. This would be the consequence as against their judgment and execution creditors, as by reason of the agency created by the provision in the instrument of transfer the assignors represented the bank in making the collections, and the amount so collected by them would be applicable *pro tanto* to the payment of the debt. (*Conkling* v. *Shelley*, 28 N. Y. 360; *Brackett* v. *Harvey*, 91 N. Y. 214, 221; *Ellsworth* v. *Phelps*, 30 Hun, 646; *Sperry* v. *Baldwin*, 46 id. 120.)

The right of action to set aside a transfer of property made in fraud of creditors by a debtor, who thereafter makes an assignment for the benefit of creditors, is in the assignee. (Laws of 1858, chap. 314; *Loos* v. *Wilkinson*, 110 N. Y. 195.)

That is not this case. It is within the purpose for which the present action is brought to obtain the possession and control of the assets to which the assignee alleges he is entitled by virtue of the assignment for the benefit of the creditors of the assignors, and to enjoin the defendant from collecting the accounts which are alleged

to have been assigned to the plaintiff. The purpose of the action in that respect is legitimate.

As between the assignors and the defendant, the collections made upon the accounts assigned to the latter did not, to the extent that the money so collected was retained by them, operate as payment on their indebtedness to the defendant. As between such original parties to the assignment to the bank both the debt and the security remained except so far as the money was paid over to or received by the defendant. (*Brackett* v. *Harvey, supra.*)

The assignee of a voluntary assignment for the benefit of creditors of the assignor, except so far as he is authorized, takes only such powers in respect to the subject of the assignment as the assignor has and can confer upon him, and the equities existing against the assignor remain effectual against the assignee. He has not the character of a *bona fide* purchaser. (*Reed* v. *Sands,* 37 Barb. 185; *Slade* v. *Van Vechten,* 11 Paige, 21; *Van Heusen* v. *Radcliff,* 17 N. Y. 580, 582.)

By the statute before referred to, the assignee is vested with the right of action to attack a transfer of property made by his assignor before the assignment in fraud of his creditors. A statutory provision, to enable the assignee in the execution of a trust to pursue, by action, any remedy by which the creditors, as such, represented by him can lawfully seek equitable relief, may be wise as well as convenient.

The permission to the assignors, expressed in the instrument of transfer, to collect the accounts included in it was relieved from the imputation of fraud as against creditors by the fact that, as they were to make the collections only for the defendant, the creditors can insist that the collections which they did make were made in the execution of such agency, and in that may be seen support for an action for judicial direction that the amount so collected by them be applied in satisfaction *pro tanto* of the indebtedness to secure which the transfer was made.

As the plaintiff is unable to seek such relief, that subject requires no further consideration in the present case. By the conclusion here reached both parties have partially succeeded and partly failed in their contentions.

The plaintiff is entitled to the relief that the defendant be enjoined from collecting or receiving payment of any of the accounts in question other than those included in the assignment to it of date July 24, 1895.

The defendant is entitled to the benefit of the assignment to it of that date for the purpose of collecting the accounts assigned by that instrument, an amount not exceeding that remaining unpaid of the indebtedness which that assignment was made to secure.

And subject only to that right of the defendant, the plaintiff, by the assignment to him, took title to the accounts in question, and the defendant is entitled to the amount collected by plaintiff as aforesaid upon the accounts assigned to the defendant.

Judgment is directed accordingly, with costs to both parties, payable out of the estate assigned to plaintiff.