BANK OF ELKHART, Appellant, v. WESTERN LUMBER COMPANY, Respondent.

Kansas City Court of Appeals, November 5, 1894.

**Attachment:** INSOLVENCY OF DEBTOR: STATUTE CONSTRUED. The fact that a debtor who fraudulently disposes of a part of his property is solvent, will not defeat an attachment.

*Appeal from the Jackson Circuit Court.*—HON. J. McD. TRIMBLE, Special Judge.

REVERSED AND REMANDED.

*Wash. Adams* and *Muckle & Winn* for appellant.

(1) The court erred in refusing to instruct the jury to find for plaintiff. *First.* The written transfer of defendant's accounts and books of account, which were liable to seizure on execution (R. S. sec. 4919), and are embraced in the term "personal property" (R. S. sec. 6570), being an absolute assignment on its face and showing, when read and construed in connection with the receipt written on the same paper, that the possession of the accounts and books was to remain with defendant, was fraudulent on its face as to creditors. *Stewart v. Nelson*, 79 Mo. 522, 524; *Wright v. McCormick*, 67 Mo. 426; Bump on Fraud. Conveyances, pp. 212, 264. *Second.* This written transfer, being absolute on its face, but intended as security for the payment of a debt, was constructively fraudulent. *Molasky Mfg. Co. v. Slute*, 36 Mo. App. 502; *Beeler v. Crane*, 135 Ill. 27; *Lang v. Stockwell*, 55 N. H. 563; *Coburn v. Pickering*, 3 N. H. 415; *Parker v. Pattie*, 4 N. H. 176; *McCulloch v. Hutchinson*, 7 Watts. 434; *Passmore v. Eldridge*, 12 Serg. & R. 198; *Chenery v. Palmer*, 6 Cal. 119; *Twyne's Case*, 3 Coke's Rep. 80; *Pattison v. Letton*, 56 Mo. App. 325. (2) *First.* The chattel mortgage to Charles H. V. Lewis, cashier, is on its face fraudulent as to creditors, as it appears from the face of it that it was intended that it should not be foreclosed at the maturity of the note it secured, which fell due one day after the date thereof, in case of default in payment, but that it should run on indefinitely, the natural effect being to benefit the mortgagor, who was to remain in possession and make sales, by shielding the property *in esse* and all future additions thereto, for an indefinite time, from creditors. *State to use etc., v. Mueller*, 10 Mo. App. 87; *The Oliver-Finnie Gro. Co. v. Miller*, 53 Mo. App. 107. *Second.* This mortgage

was also fraudulent, because by the undisputed facts appearing from defendant's evidence additional lumber and materials to the amount of $1,744.62 and a horse costing $77 were purchased and paid for out of the proceeds of sales. When the mortgagor of personal property is allowed to sell and buy other property with the proceeds of sales of the mortgaged property, the mortgage is fraudulent as to creditors. *State to use of Kratzer v. Busch*, 38 Mo. App. 440; *Goddard v. Jones*, 78 Mo. 518; *Smith v. Ham*, 51 Mo. App. 433. A conveyance is fraudulent in the sense that it will support an attachment if made by defendant with fraudulent intent on his part, although the mortgagee or grantee may not have participated in the fraud. *Sauer v. Behr*, 49 Mo. App. 89; *Stewart v. Cabanne*, 16 Mo. App. 517; *Tube Works Co. v. Machine Co.* 118 Mo. 375; *Bank v. Doran*, 109 Mo. 40; *Hillard v. Cagle*, 46 Miss. 340; *Hafner v. Irwin*, 1 Iredell (N. C.), Law, 490; *Gill v. Schley*, 2 Md. Ch. 270; *Hildebran v. Brown*, 17 B. Mon. 782; *Blennerhasset v. Sherman*, 105 U. S. 100; *Field v. Liverman*, 17 Mo. 218; *Collins v. Willhoit*, 35 Mo. App. 590; *Goldsby v Johnson*, 82 Mo. 606. "When facts are undisputed or clear, the court should apply the law and determine the case." *Powell v. Powell*, 23 Mo. App. 363, 373; *Wright v. McCormick*, 67 Mo. 426, 430; *Stewart v. Nelson*, 79 Mo. 523, 524; *State to use, etc., v. Busch*, 38 Mo. App. 440; *Reichenbach v. Ellerbe*, 115 Mo. 595. "It is only necessary for a court to instruct the jury upon disputed facts." *Russell & Co. v. Ins. Co.* 55 Mo. 585, 594; *Shirts v. Over John*, 60 Mo. 305, 308.

*F. W. Randolph, Dobson, McCune & Doggett* for respondent.

(1) The trial court could not, with propriety, have disturbed the verdict of the jury—much less can this

court. The evidence abundantly justified the verdict. Numerous cases might be cited under this point, but we call attention only to *Parker v. Roberts*, 22 S. W. Rep. 914. (2) The attempt of appellants to make capital out of the transfer of the accounts of the Western Lumber Company to the Union National Bank, and the redelivery of the accounts by the bank to the lumber company for collection, is without merit and without support in the authorities; on the contrary such a transaction has been held by the supreme court of the United States, and other courts, to be a perfectly legitimate transaction. See *Clark v. Iselin*, 21 Wall. 360; *White v. Platt*, 5 Denio (N. Y.) 269; *Kreher v. Mason*, 33 Mo. App. 297–319; *Lawrence v. McKenzie* 55 N. W. Rep. (Iowa), 505. (3) The chattel mortgage to C. H. V. Lewis for the bank was and is not fraudulent on its face; such instruments have been frequently upheld by courts of this and other states. *Dobyns v. Meyer*, 95 Mo. 132; *Petring v. Chrisler*, 90 Mo. 649. (4) The giving of a deed absolute in form, but intended merely as a security for a *bona fide* debt, is only a badge of fraud. It is not conclusive evidence of fraud—is not fraud in law. The great weight of authority sustains this position. Bump on Fraudulent Conveyances [3 Ed.] 41–60; *Bank v. Jaffrey*, 41 Kan. 694; *Gaffney v. Cignaigo*, 1 Dillon, 158; *Bank v. Jacobs*, 10 Mich. 349; *Daswell v. Adler*, 28 Ark. 82; Wait on Fraudulent Conveyances [2 Ed.], 238; *Flemington National Bank v. Jones*, 50 N. J. Eq. 244; *Day v. Goodbar*, 69 Miss. 687; *Hutchinson v. Bank* (Ind. Sup. Ct.) 30 N. E. Rep. 952; *Abernathy Furniture Co. a. Armstrong*, 46 Kan. 270; *Shore v. Farwell*, 9 Ill. App. 256; *Spencer v. Deagle*, 34 Mo. 455; *Samuel v. Kittinger*, 33 Pac. Rep. (Wash.) 509; *Tyler Paper Co. v. Lithographing Co.*, 31 Ill. App. 500; *Ross v. Duggan*, 5 Colo. 85; *McClure v. Smith*, 14 Colo. 297. *First*. Our own supreme court has

frequently held that a voluntary conveyance is void *per se*, only when a grantor is insolvent, so that the conveyance would have the effect of hindering or delaying creditors. *Patten v. Casey*, 57 Mo. 118; *Lane v. Kingsbury*, 11 Mo. 402; *Walsh v. Ketchum*, 84 Mo. 427; *Lloyd v. Fulton*, 91 U. S. 479; Bump on Fraudulent Conveyances, pp. 275, 276. *Second*. Security for a *bona fide* debt in the form of an absolute conveyance of real estate is upheld in this state and treated as a legal and proper form or mode of giving security. *Schradski v. Albright*, 93 Mo. 43; *O'Neill v. Capell*, 62 Mo. 202. *Third*. Even purposely withholding from record a deed is asserted to be only a slight badge of fraud by Bigelow in his works on fraud (vol. 2, p. 437).

ELLISON, J.—The case here arises on a plea in abatement to an affidavit in attachment wherein it was alleged that defendant (who was a dealer in lumber) had fraudulently conveyed its property so as to hinder and delay its creditors. The result in the circuit court was in favor of defendant and plaintiff has appealed. The instructions given at the trial were upon the theory that, although the conveyances of property shown to have been made by defendant were fraudulent, yet, unless defendant was at the time insolvent or became insolvent by the conveyance, it did not justify the attachment. In other words, the theory entertained and enforced at the trial was that, though the transfers were fraudulent, yet, if the defendant had other property which might have been subjected to the payment of his debts, then the creditors could not have been hindered or delayed and an attachment would not lie. We feel compelled to dissent from this proposition. The statute is that whoever "has fraudulently conveyed or assigned his property or effects, so as to

hinder or delay his creditors" shall be liable to have his property attached. The argument supporting the theory advanced by the defendant is that there must be not only a fraudulent conveyance but that the fraudulent grantor must also be insolvent; otherwise, it is said, there is no hindering or delaying. We do not believe this to have been the understanding of the bar; certainly such theory has not found practical application in the courts as is evidenced by reported cases. Issues arising on pleas in abatement have been determined in the courts without reference to the solvency or insolvency of the fraudulent grantor. Such a construction would lead to this—that a creditor would in all cases of fraudulent conveyance or concealment, stand by until he ascertained that the conveyances had reached the point of insolvency. In other words, under the seventh, eighth, ninth and tenth causes for attaching there can be no attachment, under this view, except the debtor is insolvent. Insolvency would thus be the chief hazard to be run by the attaching creditor and would become the chief issue in the great body of attachment cases. So that instead of proving the specific fraudulent conduct of the debtor with reference to his property, the creditor would be compelled to go into the delicate measurement of values of assets as compared with the total indebtedness of the fraud *feasor*, and if the balance should turn in favor of the assets the creditor would be mulct in damages to his fraudulent debtor. Whenever a debtor fraudulently conveys or conceals his property he is, in theory of law, doing that, the tendency of which is to hinder or delay his creditors, notwithstanding he has other property out of which the claim could be made. There is certainly a hinderance as to that part of the property so disposed of and which the creditor had a right to have appropriated (in the absence of voluntary pay-

ment by the debtor) to the liquidation of his claim. The scope of the attachment statute shows that it was not enacted with a view of being confined within the limits of insolvent debtors. For instance, it is cause for attachment that the debt was fraudulently contracted, however solvent the fraudulent debtor may be. So, if the debtor has failed to pay for property on delivery as agreed. So if the debtor became such by reason of committing a felony or seducing a female, his property becomes liable to be attached without reference to his ability to meet his obligations. The statute justly assumes that if the debtor fails or refuses to pay and practices the frauds specified in those portions of the statute under discussion and to which we have referred, it is time for the creditor to become alarmed for his safety and to set about to secure himself.

The argument advanced and authorities cited supporting voluntary conveyances and gifts where the donor is solvent and free from substantial debt, are not in point. Such conveyances of property are not fraudulent, except from the fact (speaking generally) that the effect of them would be to deprive the donor of the ability to discharge his debts.

The question which has been presented here was not before the supreme court in *Reed v. Pelletier*, 28 Mo. 173, but the language used in that case can be appropriately adopted here. It is there said: "If the attachment is based on either the seventh, eighth, ninth or tenth clauses, it will be sustained on proof that the defendant fraudulently had done, or was about fraudulently to do, any of the prohibited acts; and whether the act be fraudulent will depend on the judgment which the law pronounces upon it."

Taking out of the case this element which controlled its disposition below, we find that the chattel

mortgage executed by defendant to the Union National Bank was a fraudulent transfer of defendant's property and justified the attachment. The mortgage to secure $27,569 was executed on the twenty-fifth day of February, 1891, and not recorded until the sixteenth day of June thereafter, the day after the levy of the attachment. No possession was turned over to the bank. The defendant was left in full control and possession, so far as was evidenced to the public, just as it was before the transfer. It carried on the business and dealt with the public without giving any outward indication of a change in the control, or ownership, until after the attachment when the bank took possession. It is true the mortgage itself provided that the proceeds of sales were to be turned over to the bank. But nevertheless defendant replenished the stock by purchases which were paid for out of proceeds of sales; other sales were made on credit. Though a portion of the proceeds of sales was turned over to the bank as required by the mortgage, yet, besides replenishing the stock with proceeds of sales, a horse was purchased and taxes paid on defendant's property which was not included in the mortgage. There was evidence showing that when the mortgage was executed the bank engaged the secretary and yard manager of defendant to look after its interest, and, as expressed by some of the witnesses, to take charge of the yard for the bank. The acts which we have enumerated were done with his knowledge. These facts, or substantially these, being undisputed, the court should have directed a verdict for plaintiff sustaining the attachment.

The result of the foregoing is that we reverse the judgment and remand the cause with directions for the circuit court to enter judgment sustaining the attachment. All concur.

Bank v. Lumber Company.

### ON MOTION FOR REHEARING.

ELLISON, J.—A further consideration of this case has not led us to the conclusion that we have misconstrued the attachment statute in the foregoing opinion. The legislature intended to grant the right of attachment, when there has been fraud in the disposition of the debtor's property; and the phrase, "so as to hinder or delay his creditors," is no more than a legislative declaration that a fraudulent disposition of the debtor's property does hinder or delay his creditors. It is an assumption in the legislative mind, expressed in the enactment, that a fraudulent disposition by the debtor of his property, hinders or delays his creditors. That it is the fraud of the debtor which the legislature seeks to circumvent is, we think, further evidenced from the fact that an insolvent retains the *jus disponendi* of his property. He may, in this state, make a *bona fide* sale of his property, though such sale will hinder or delay his creditors. But the statute is designed to prevent the success of a fraudulent sale by either a solvent or insolvent debtor. A creditor grants credit to his debtor on the strength and faith of all of the debtor's property and while the debtor may continue to deal with and dispose of all or any part of such property, without regard to the creditor, or how it may affect him, he can not do so fraudulently, without subjecting himself and his property to the provisions of the statute.

We have considered this question in connection with a decision of this and the supreme court, on attachment under the landlord and tenant statute. *Hazeltine v. Ausherman*, 87 Mo. 410; *Dawson v. Quillen*, 43 Mo. App. 118. The attachment statute of the landlord and tenant act is unlike the general attachment law, but whatever analogy there may be between the two, is, by those decisions, shown to be in favor of the interpreta-

tion we have given the general law. The landlord and tenant act grants a right of attachment when the tenant has disposed of, or is removing, or is about to remove the crop, "so as to endanger, hinder or delay the collection of the rent," without reference to whether it was done fraudulently, or *bona fide*. The statute, in such case, makes the mere act, without reference to its motive, a cause of attachment; and it was held in the cases cited, that the disposal or removal must be of a sufficient amount of the crop to endanger, hinder or delay the landlord in the collection of the rent out of the crop. In other words, that if there was a sufficient amount of the crop left to secure the rent, there was no cause for attachment. But it was further held, that the question whether the collection of the rent was endangered, hindered or delayed, was to be decided with reference to the amount of the crop retained by the tenant, without regard to what amount of other property he might have. So that a tenant might be a person of large means, and yet be liable to attachment, if he disposed of a sufficient amount of the crop to endanger the collection of the rent *out of the crop*. We think the motion should be overruled.