ROCK ISLAND NATIONAL BANK, *Appellant*, v. POWERS
*et al.*

In Banc, June 2, 1896.

1. **Fraudulent Conveyance:** CHATTEL MORTGAGE: RETENTION
AND DISPOSITION BY MORTGAGOR: PAYMENT OF MORTGAGE DEBT.
A chattel mortgage which by its terms allows the mortgagor to remain
in possession of the mortgaged property and sell and dispose of it and
apply the proceeds to the payment of the mortgage debt is valid on
its face as against other creditors of the mortgagor.

2. ———: ———: ———: BENEFIT OF MORTGAGOR: EXTRINSIC EVI-
DENCE. A chattel mortgage which by its terms allows the mortgagor
to retain possession of the mortgaged property and sell and convert
the proceeds to his own use is void on its face, as against creditors;
and if such power is not given by the terms of the mortgage itself, but
is given by the mortgagee by agreement outside the mortgage, it will
have the same effect.

3. ———: ———: PRACTICE. Where a chattel mortgage is not void on
its face, and the extrinsic evidence as to its fraudulent character is not
conclusive, the question of fraud is one for the jury, under proper
instructions.

4. ———: ———: REGISTRY: POSSESSION OF MORTGAGEE. Failure to
record a chattel mortgage avoids it as to all persons, except the par-
ties thereto, unless possession of the mortgaged property be delivered
to and retained by the mortgagee, trustee, or *cestui que trust,* and such
change of possession must be actual, open, and visible, regard being
had to the situation and character of the property, and it must take
place before the rights of third parties intervene. R. S. 1889, sec.
5176.

5. ———: DEED ABSOLUTE ON ITS FACE: WRITTEN DEFEASANCE: SECRET
TRUST: CREDITOR: ESTOPPEL. A deed absolute on its face and duly
recorded, which is modified by an unrecorded contemporaneous writ-
ten defeasance, in the nature of a secret trust for the benefit of the
grantor, is fraudulent as to the creditors of the grantor, and the fact
that a creditor took a like security in no way changed the nature of
such absolute deed or estopped the creditor from showing its true
character.

6. ———: SOLVENCY OF DEBTOR: ATTACHMENT. The fact that a debtor
who fraudulently disposes of a part of his property is solvent will
not defeat an attachment upon the ground of such fraudulent dis-
position.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Muckle & Winn* and *Wash Adams* for appellant.

(1) The evidence showed that the mortgage to C. H. V. Lewis, cashier, was one in part for the use of the mortgagor, and therefore fraudulent in law and ground for attachment. The court therefore erred in giving instruction number 1 at the instance of defendant. When the mortgagor of personal property is allowed to continue in possession and sell the mortgaged property and buy other property with the proceeds of sales, the mortgage is fraudulent as to creditors. *Bank v. Lumber Co.*, 59 Mo. App. 317; *State to use v. Busch*, 38 Mo. App. 440; *Goddard v. Jones*, 78 Mo. 518; *Smith v. Ham*, 51 Mo. App. 433; *Petring v. Chrisler*, 90 Mo. 649; *Grocery Co. v. Miller et al.*, 53 Mo. App. 107; *Thompson v. Foustal*, 10 Mo. 297; *Hepburn v. Muller*, 10 Mo. App. 87. If a conveyance is fraudulent in law it is ground for attachment, and no proof of an actual intent or purpose to defraud is required in such a case. *Bank v. Lumber Co., supra; Reed v. Pelletier*, 28 Mo. 173; *Douglas v. Cisna*, 17 Mo. App. 54; *Temple v. Cochran*, 13 Mo. 119; *Gens & Tiede v. Hagardine & Co.*, 56 Mo. App. 248; *Noyes v. Cunningham*, 51 Mo. App. 194; *Sauer v. Behr*, 49 Mo. App. 89. (2) The court erred in giving instruction number 9, at the instance of defendant. *First.* A delivery after the suit was commenced, could not purge the mortgage of fraud. *Second.* There was no competent evidence tending to prove a delivery of possession before the suit was commenced. *Third.* There was evidence tending to show that the chattel mort-

gage was fraudulent in fact, upon which evidence the court based instruction number 8 given at the instance of plaintiff. If a mortgage of personal property is fraudulent in fact this fraud is not purged by a delivery of the mortgaged property to the mortgagee. *Boland v. Ross*, 120 Mo. 208. (3) The court erred in giving instruction numbered 10 at the instance of defendant. A deed of conveyance of property, real or personal, absolute in form, made by one indebted to others besides the grantee, accompanied by a secret agreement between the parties to it inconsistent with its terms, and securing some right to the grantor in the property conveyed, or in the rents and profits thereof, or showing that the conveyance was intended as security for the payment of a debt, while valid between the parties to it, is fraudulent in law as to existing creditors of the grantor, and this is especially so if the grantor was at the time financially embarrassed. This doctrine with reference to such conveyances of real estate was applied and upheld in the following well considered cases: *Stratton v. Putney*, 63 N. H. 679; *Beeler v. Crane*, 135 Ill. 27; *Reese v. Bromberg*, 88 Ala. 628; *Holcombe v. Roy*, 1 Iredell, 340; *Gregory v. Perkins*, 4 Dev. 50; *North v. Belden*, 13 Conn. 276; *McNeil v. Glenn*, 3 Md. Ch. 349; *Sims v. Gains*, 64 Ala. 392; *Bryant v. Young*, 21 Ala. 264; *Hartzhorn v. Williams*, 31 Ala. 149; *Whitney v. Hill*, 9 N. H. 32; *Smith v. Lowell*, 6 N. H. 69; *Watkins v. Arms*, 64 N. H. 99; *Ladd v. Wiggins*, 35 N. H. 421; *Lukin v. Aird*, 8 Wall. 78; *Moore v. Wood*, 100 Ill. 451; *Strong v. Lawrence*, 58 Iowa, 55. The same doctrine applies to conveyances of personal property absolute on their faces and intended not to be absolute sales but securities for payment of debts. *Beeler v. Crane*, 135 Ill. 27; *Long v. Stockwell*, 55 N. H. 563; *McCulloch v. Hutchinson*, 7 Watts. 434; *Passmore v. Eldridge*, 12 Serg. & R. 198; *Chenery v. Palmer*, 6 Cal. 119; *Mfg.*

*Co. v. Steele*, 36 Mo. App. 502; *Twyne's Case*, 3 Coke's Rep. 80; *Patterson v. Letton*, 56 Mo. App. 325. (4) The court erred in refusing plaintiff's instruction numbered 1. *First.* The false and feigned deeds of conveyance, absolute in form, made to Coleman, Littlefield, Patterson & Olney, while defendant was financially embarrassed, carried falsehoods, on their faces, concealed from creditors defendants' interest in the property conveyed and in its right to the rents thereof, and by reason of the falsehoods and deceptions, whereby defendant's property was concealed, tended to hinder and delay them, and are fraudulent in law. See authorities cited under last head. *Second.* Since the defendant remained in possession of the personal property mortgaged to C. H. V. Lewis, cashier, and sold a considerable portion of the mortgaged property on credit, as well as for cash, and with the proceeds of sales paid for other property—lumber and materials, and a horse—with the knowledge and consent of the Union National Bank, the mortgage is fraudulent in law and ground for attachment. *Bank v. Lumber Co., supra; State to use v. Busch*, 38 Mo. App. 440; *Goddard v. Jones*, 78 Mo. 518; *Smith v. Ham*, 51 Mo. App. 433; *Reed v. Pelletier*, 28 Mo. 173; *State to use v. Tasker*, 31 Mo. 445; *Weber v. Armstrong*, 70 Mo. 219; *Bullene v. Barrett*, 87 Mo. 186; *Douglas v. Cisna*, 17 Mo. App. 54; *Sauer v. Behr*, 49 Mo. App. 89. Delivery of possession of mortgaged personal property to a mortgagee must be actual, open, unequivocal and exclusive. Jones on Chattel Mortgages [3 Ed.], secs. 186, 187; *Moser v. Class*, 23 Mo. App. 420. When facts are undisputed or clear the court should apply the law and determine the case. *Wright v. McCormack*, 67 Mo. 426; *Stewart v. Nelson*, 79 Mo. 523; *Reichenbach v. Ellerbe*, 115 Mo. 595; *Powell v. Powell*, 23 Mo. App. 363. It is only necessary for the court to instruct the

jury upon disputed facts. *Russell & Co. v. Ins. Co.*, 55 Mo. 585. (5) The court erred in refusing plaintiff's instruction number 11. See authorities cited under the second subdivision of specification 4. (6) The court erred in refusing instruction number 9 asked by plaintiff. A defendant can not be allowed after admitting the existence of grounds for attachment before suit to deny the existence of such grounds after suit is brought, and thus place plaintiff in a trap. Where an attachment is sued out, based on statements made by the defendant before the writ was issued, which, if true, would be ground for attachment, the defendant will be estopped to deny them. *Roach v. Brannan*, 57 Miss. 493; *Cooke v. Kuy Kendall*, 41 Miss. 65; *Morgan v. Nunes*, 54 Miss. 308; *Myers v. Farrell*, 47 Miss. 281. 1 Wade on Attachments, secs. 90–95, 97. An agreement between mortgagor and mortgagee that a chattel mortgage shall be withheld from record so as not to affect the mortgagor's credit renders the mortgage fraudulent as to creditors. *Sauer v. Behr*, 49 Mo. App. 89; *Cent. Nat. Bk. v. Doran*, 109 Mo. 40; *Hillard v. Cagle*, 46 Miss. 340; *Hafner v. Irwin*, 1 Iredell (N. C.) Law, 490; *Gill v. Schley*, 2 Md. Ch. 270; *Hildebran v. Brown*, 17 B. Mon. 782; *Blennerhasset v. Sherman*, 105 U. S. 100; *Field v. Liverman*, 17 Mo. 218; *Collins v. Willhoit*, 35 Mo. App. 590; *Goldsby v. Johnson*, 82 Mo. 606; *Bank v. Buck*, 123 Mo. 141.

*Trimble & Braley* for respondents.

(1) The evidence shows that the mortgage given to the Union National Bank was not for the use of the mortgagor, and a verdict for the defendant was the only one which could have been rendered under the law and the evidence. L. L. Bowen went into possession as respondent's agent and used the assets to pay the

mortgage debt. He did not apply a cent of it to any other purpose. The authorities say this is strictly legitimate and is no fraud. *Hubbell v. Allen*, 90 Mo. 574; *Metzner v. Graham*, 57 Mo. 404; *Brackett v. Harvey*, 91 N. Y. 214, and cases cited; *Wilson v. Sullivan*, 58 N. H. 260; *Kleine v. Katzenberger*, 20 Ohio St. 110; *Overman v. Quick*, 8 Bissell, 134; *Hawkins v. Benk*, 1 Dillon, 462; *Goodheart v. Johnson*, 88 Ill. 58; *McLaughlin v. Ward*, 77 Ind. 383; *Abbott v. Goodwin*, 20 Me. 408; *Marks v. Hill*, 15 Gratt. 400. Appellant's authorities on this proposition are all cases where the mortgagor remained in possession and kept the money arising from sales, and are, therefore, not in point. No objection can be made to the purchase of such stock as was necessary to keep the mortgaged property in salable shape. The bank could have done it had it been formally in possession, and it could, under the law, permit Bowen to do it; in fact, it was its duty to instruct Bowen to do so, and to use every effort to realize as fully and as rapidly as possible from the property. *Brackett v. Harvey, supra.* Whether the sales were for cash or for credit is immaterial. The record does not show that the bank directed Bowen to sell on credit, but if it did, the proceeds of the goods so sold are deemed to be applied on the mortgage debt. *Wilson v. Sullivan, supra.* (2) Under the evidence and the law, as laid down in the foregoing authorities, if there was any error in the giving of defendant's ninth instruction, it was in not instructing favorably enough to defendant. (3) Appellant is estopped by the acts of Tileston from objecting to the conveyances complained of, but Robinson's active participation in their benefits as effectually precludes their complaining as though it had executed a sealed instrument releasing respondent from all claim therefor. If there was any fraud in these transactions the plaintiff was as guilty as anybody, and can not ask

relief because it has not "clean hands." (4) If there was any error in not instructing peremptorily, it was in not instructing to find for the defendant. (5) Appellant's fifth point is not well taken, and the instruction referred to therein was properly refused. It did not quote the evidence correctly because the Western Lumber Company was not in possession after the execution of the mortgage, and if it was, the Union National Bank had the right to permit or consent to the lumber company doing whatever it could do itself, and if it, the bank, had been in possession it could have bought the horse and the new lumber. The business was being closed up, and whatever arrangements would most facilitate the operation were proper and legitimate. See authorities cited under point 1. (6) The court correctly refused plaintiff's ninth instruction. A creditor who has been misled by representations that there are no incumbrances upon his debtor's property, when secret liens do exist, is the only person who can complain of an unrecorded lien. He is the only person who, in the eye of the law, has lost anything. Appellant was never misled in this manner, and has dealt precisely as it would have done had the mortgage been on record. The mortgage was given for a valuable consideration, to secure a *bona fide* debt, and plaintiff being a prior creditor, can not complain of its being withheld from record, for the reason that it was not thereby injured. *Barton v. Sitlington*, 128 Mo. 164; *Forester v. Moore*, 77 Mo. 651; Jones on Chattel Mortgages, sec. 337a; *Johnson v. Stellwagen*, 67 Mich. 10; *Brown v. Brabb*, 67 Mich. 17. (7) The following authorities fully justify the position of the court below, as to appellant's seventh point: *Lane v. Kingsberry*, 11 Mo. 402; Bump on Fraudulent Conveyances, pp. 118, 275, 276. (8) The judgment was for the right party irrespective of any technical error in instructions or rulings on admissibil-

ity of testimony. It was proven by the testimony of Powers, president of the defendant company, that it was abundantly solvent on February 25, 1891, when the chattel mortgage and deed of trust which are alleged by appellant to be fraudulent, were executed. The evidence shows that defendant had on that day more than $150,000 worth of property over and above incumbrances, which was subject to execution. Appellant's statement that the defendant's property "consisted principally of equities, fictitiously valued at fancy figures," is not borne out by the record, but on the contrary, is very flatly contradicted. There is not a scintilla of evidence in the entire case which will support the contention that the defendant was, on the day named, unabled to pay all its debts. Had the conveyances to the Union National Bank, John Coleman, Littlefield, *et al.*, been without consideration, the trial court, under the evidence, would have been obliged to direct a verdict for the defendant. *Lloyd v. Fulton*, 1 Otto, 479; *Jones v. Clifton*, 11 Otto, 225; *Hinde's Lessee v. Longworth*, 11 Wheat. 199; *Walsh v. Ketchum*, 84 Mo. 427; *Rose v. Colter*, 76 Ind. 590; *Brambaugh v. Richcreek*, 127 Ind. 240; Bump on Fraudulent Conveyances, pp. 275, 276, 291.

### DIVISION ONE.

BRACE, P. J.—This is an action on a promissory note by attachment, levied on defendant's stock of lumber and other personal property at its lumber yards on Troost avenue, between Nineteenth and Twentieth streets, in Kansas City, issued on an affidavit which charged: "That the defendant Western Lumber Company has fraudulently conveyed or assigned its property or effects so as to hinder or delay its creditors" and "that the defendant Western Lumber Company has fraudulently concealed, removed, or disposed of its

property or effects so as to hinder or delay its creditors;'' on which issue was joined by the usual plea, the issue found for the defendant and the attachment abated.

Thereafter the cause proceeded to final judgment in favor of the plaintiff for the sum of $2,709.50 and the plaintiff appeals to this court, for errors alleged to have been committed on the trial of the issues on the plea in abatement.

The note sued on is for $2,139.16, dated January 14, 1891, payable four months after date with ten per cent interest from maturity.

The suit was instituted, and the writ of attachment sued out and levied on the fifteenth of June, 1891.

To support the affidavit therefor the plaintiff introduced evidence tending to prove that from the first day of January to the fifteenth of June, 1891, the defendant was largely indebted, was in embarrassed circumstances, unable to meet its liabilities as they matured, and was disposing of its property, real and personal, to its creditors; introduced several warranty deeds executed by the defendant between those dates whereby they conveyed valuable real estate to the grantees and among them three conveyances, absolute on their face, duly acknowledged and recorded; in connection with each of which deeds the plaintiff read in evidence a written contract of defeasance executed by the grantees therein of the same date, whereby the grantor agreed to reconvey the property to the grantee upon the payment of the debt recited in the contract, which defeasances were not put upon record; also a chattel mortgage dated the twenty-sixth of February, 1891, duly executed, and acknowledged by the defendant on that day, but withheld from record until the sixteenth of June, 1891, the day after the attachment was levied, whereby the defendant conveyed to C. H. V. Lewis,

cashier of the Union National Bank of Kansas City, "all of the stock of lumber and all buildings and the furniture and fixtures therein contained of the lumber yard known as the Western Lumber Company's yard and situate in Kansas City, Jackson county, Missouri, on land leased by said company from Victor Bell, fronting on Troost avenue between Nineteenth and Twentieth streets in said city; also all the lumber and materials that may be added to said stock from time to time; also one sorrel horse called Mike, about seventeen hands high, eight years old; also two single lumber wagons and two sets of heavy weight single harness," to secure the payment of a promissory note dated the twenty-fifth of February, 1891, payable to said Lewis as such cashier, one day after date, for the sum of $27,569, with interest from maturity at the rate of eight per cent per annum.

In which chattel mortgage it was provided "that said Western Lumber Company shall keep a correct daily account of all lumber sold by it, and shall at the close of said day's business account to the said Charles H. V. Lewis, cashier, for all moneys so received, and shall pay the same to him, and all moneys so received shall be credited on the note." And the same was conditioned to be void upon the payment of said promissory note; "but if the said Western Lumber Company shall fail or make default in the payment of said indebtedness or any part thereof when the same shall become due and payable, or if it shall sell, except as above provided, or attempt to sell, remove, or attempt to remove, said property out of Kansas City, Missouri, at any time before said indebtedness is fully paid and discharged, whether the same be due or not, then it shall be lawful for the said Charles H. V. Lewis, cashier, or anyone in his name, to take possession of said property wherever it may be found and sell the

same in any manner he shall think fit, and out of the proceeds arising from said sale pay off said indebtedness or so much thereof as shall be unpaid, together with the costs and expenses of said sale, and the overplus, if any there be, shall be paid to the said Western Lumber Company.''

Plaintiff also read in evidence a deed of trust dated February 25, 1891, recorded June 16, 1891, the day after the attachment was levied, made by the Western Lumber Company to Francis M. Randolph, as trustee, for Charles H. V. Lewis, cashier, to secure the payment of the promissory note mentioned in the chattel mortgage above set out, and conveying lots 10, 13, 14, 17, 18, 19, 24, in Linwood Summit, an addition to Kansas City.

Also the following assignment and receipt written on the same paper:

"KANSAS CITY, Mo., Feb'y 25, 1891.

"We hereby assign to Charles H. V. Lewis, cashier, all of the accounts due the Western Lumber Company, as shown by the books kept at such yard.

"WESTERN LUMBER COMPANY,

"By P. W. POWERS, President.

"Received of Charles H. V. Lewis, cashier, for collection and return to him of net proceeds, the accounts and books of the Western Lumber Company conveyed to him by the above transfer and assignment.

"WESTERN LUMBER COMPANY,

"By P. W. POWERS, President.''

Plaintiff also read in evidence a receipt given by the Union National Bank for the note of $27,569, as follows:

"Received from the Western Lumber Company its promissory note for $27,569, dated February 25, 1891, due one day after its date, with interest from

maturity at the rate of eight per cent per annum. Said note is taken and held as collateral for any renewal of said notes, or any of them, or any part thereof, as collateral security for any indebtedness of said lumber company now existing or hereafter created in favor of the payee, or the Union National Bank of Kansas City, Missouri; but the fact that said notes for which this is given are not due according to their face shall in nowise preclude or prevent the holder of said note for $27,569 from collecting the same according to its tenor and effect, nor from taking possession of any or all of the property conveyed by deed of trust or the mortgage to secure the same, and subjecting such property to the payment of said indebtedness; when the indebtedness for which this note is given as collateral security shall be paid this note shall be canceled and surrendered.

"UNION NATIONAL BANK,
"By F. P. NEAL, Vice-President.
"Kansas City, Mo., Feb'y 25, 1891."

It further appeared from the undisputed evidence that the notes referred to in the receipt and for which this $27,569 was given as collateral, and which the chattel mortgage was given to secure, were three notes, two for $10,000 each, given for an indebtedness due the bank on open account, and the other for $7,569, for money borrowed at that date, all payable ninety days after date. That the defendant lumber company, after the execution of the chattel mortgage, with the knowledge and consent of the bank, continued in possession of the property and conducted its business the same as before, buying and selling lumber as it had been accustomed to do for cash and on credit, in the course of which a portion of the proceeds of the sales of the lumber mortgaged was used in paying for additional lumber and material, and for a horse used in the

business. No indication was given to the public of any changes in the ownership of the property, or in the mode in which the business was being conducted. Occasional statements of receipts and disbursements were made by the bank, however, and the balance of the proceeds after paying rent, expenses, and salaries, was turned over to the bank. This continued until the attachment was levied, and during all this time and long before the plaintiff was a creditor of the lumber company for the indebtedness evidenced by the promissory note sued upon.

At the close of the evidence the plaintiff asked for an instruction to the jury to find for the plaintiff, which the court refused, and submitted the case on instructions of which the plaintiff complains in many particulars, as also to the action of the court, in some instances, on the admission of evidence. But if the court erred in refusing the peremptory instruction it will not be necessary to consider these instructions or notice the objections made to them, or to the rulings of the court upon the evidence. So we will first address ourselves to the error assigned in refusing the peremptory instruction, which, it is claimed, ought to have been given because the chattel mortgage was a fraudulent conveyance of the defendant's property.

1. It is settled law in this state that, "if it appears upon the face of a chattel mortgage that the mortgagor is to retain possession and have the power to sell and dispose of the property in the course of his business *for his own benefit*, then it is fraudulent as to creditors and purchasers, because made to the use of the mortgagor, and the courts will so declare as a matter of law without regard to the intention of the parties." *Hubbell v. Allen*, 90 Mo. 574; *Bullene v. Barrett*, 87 Mo. 185, and cases cited.

In *Bullene v. Barrett, supra,* it was said: "It

logically follows from this ruling that, in a case where the mortgage is fair on its face and the same impeaching facts are proven by extrinsic evidence, the same legal consequence flows from them when established. It is the facts which invalidate the deed, and not that they are made to appear by this or that evidence."

Now, while the lumber company by the provisions of this mortgage was to remain in possession of the mortgaged property with power to sell the same, the proceeds thereof were by the terms of the mortgage to be applied to the payment of the debt. The power to sell, therefore, was not to the use of the mortgagor and the mortgage was not fraudulent on its face. *Hubbell v. Allen, supra; Metzner v. Graham*, 57 Mo. 404.

It is not the right to remain in possession with power to sell in the ordinary course of business that renders a chattel mortgage fraudulent and void under the first section of our statute of fraudulent conveyances (R. S. 1889, sec. 5169), but it is the right to remain in possession and to so sell, and convert the proceeds to the mortgagor's own use that renders the instrument void. If this power appears upon the face of the instrument it is void by its terms. If it does not so appear, but is in fact given by the mortgagee by agreement with the mortgagor, outside of the mortgage, the same consequences must follow. *Barton v. Sitlington*, 128 Mo. 164, and cases cited.

It is contended for the appellant that it appears from the undisputed extrinsic evidence in this case that such power was given to the mortgagee, from the fact that the mortgagee by the contemporaneous written receipt became a security, not only for an existing indebtedness, but for future advances, and other property was bought by the mortgagor with the consent of the mortgagee, as it became necessary in the course of the business, and paid for out of the proceeds of the mortgaged

property, and the court ought to have held that the mortgage was in fact to enable the mortgagor to carry on its business, and therefore for its use and void.

While such an inference might be drawn from the facts stated, by a jury, it was hardly within the province of the court to declare such a conclusion as matter of law, and if this was the only ground for holding the chattel mortgage a fraudulent conveyance, the court might well have refused the peremptory instruction.

But it was kept off the record until after the attachment was levied and plaintiffs rights had intervened, thus rendering it obnoxious to another section of the statute of fraudulent conveyances which avoids such instruments as to all persons except the parties thereto unless "possession of the mortgaged or trust property be delivered to and retained by the mortgagee or trustee, or *cestui que trust*, or unless the mortgage or deed of trust be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides." R. S. 1889, sec. 5176.

Of course this statute means, not a constructive, but an actual, open, and visible change of possession, regard being had to the situation and character of the property, and must take place before the rights of other parties attach to the property. *Dobyns v. Meyer*, 95 Mo. 132.

The chattel mortgage in this case was not recorded and no such change of possession took place until after the plaintiff's rights attached to the property, consequently it was fraudulent and void as to plaintiff (*White v. Graves*, 68 Mo. 218; *Bevans v. Bolton*, 31 Mo. 437), and the court might well have so declared.

2. It is also claimed that the three deeds, absolute on their faces, and duly recorded, but which were converted into mortgages by the contemporaneous written defeasances given to the lumber company, but which

were not recorded, while good as between the parties, were fraudulent as to the plaintiff.

There can be no question that these deeds were thus made the means of concealing a secret trust for the benefit of the grantor, and thereby became obnoxious to the first section of the act of fraudulent conveyances. *Martin v. Estes* (1896), 132 Mo. 402; *Roberts v. Barnes*, 127 Mo. 405.

The only answer that defendant makes to this contention is that plaintiff's agent took a like security for its debt, but we can not see how the fact that plaintiff had a security which had a like infirmity, could in any way change the character of these deeds, or estop the plaintiff from showing their true character.

3. It would seem from what has been said that the court did err in refusing the peremptory instruction; and it certainly did unless the defendant's next contention can be maintained, which is, that although the conveyances aforesaid may have been fraudulent and void as to the plaintiff, yet if the defendant had other property which might have been subjected to the payment of its debts, then defendant had not conveyed its property *so as* to hinder and delay its creditors as alleged in the affidavit; thus making the right to attachment for the causes set out in the affidavit dependent upon the insolvency of the debtor.

It appears from the brief of counsel that several other attachments were levied upon the property in question at the same term with the case in hand, all of which were sustained in the court below except this one. One of these other attachments was taken by appeal to the Kansas City court of appeals, in which this question was raised upon the same state of facts and pleading as is here presented (*Bank v. Lumber Co.*, 59 Mo. App. 317), and that court held, after matured consideration, that, "the fact that a debtor who fraudu-

lently disposes of a part of his property is solvent, will not defeat an attachment.''

This is in accordance with the construction of that section of the statute that has always obtained with the profession of this state, so far as our knowledge or experience extends, and is so well maintained in the opinion in that case, that we deem it unnecessary to add anything to the argument thereof.

It will thus be seen that the court committed error in refusing the peremptory instruction, and it becomes unnecessary to consider the other points made for reversal. The judgment on the plea in abatement will therefore be reversed and the cause remanded, with directions to the circuit court to enter up judgment thereon for the plaintiff. All concur except BARCLAY, J., who dissents.

IN BANC.

PER CURIAM.—The foregoing opinion of BRACE, P. J., handed down in division number one is adopted as the opinion of the court *in banc*. BRACE, C. J., GANTT, SHERWOOD, MACFARLANE, BURGESS, and ROBINSON, JJ., concurring therein, and BARCLAY J., in the result. The judgment of the circuit court is therefore reversed, and the cause remanded to be proceeded with as in the opinion directed.