## DUNHAM v. STEVENS et al., Appellants.

160    95
94a ¹195

### Division One, February 12, 1901.

1. **Chattel Mortgage: GOODS: POSSESSION BY MORTGAGOR.** A mortgage of a stock of goods is not rendered fraudulent by the fact that the mortgagor is to remain in possession and sell in the usual course of trade, if he is required to account to the mortgagee for the proceeds of his sales, to be applied to the mortgage debt.

2. ———: ———: ———: CONTRIVED IN FRAUD. The mortgagor bought the plaintiff's stock of merchandise, paid less than ten per cent of the purchase price in cash, and gave his note and a mortgage on the goods for the balance, the note by its terms to be paid in monthly installments. The mortgagor was to remain in possession and conduct the business in the usual course of merchandising. There was no provision that he should account to the mortgagee for the proceeds of the sale. Afterwards, when the mortgagee was advised that this mortgage was illegal as against the mortgagor's creditors, a new mortgage was made, the amount of the note being for the balance of the purchase price remaining unpaid. It provided that the mortgagor was to remain in possession, sell and replenish the stock in the usual course of trade, and account monthly

Dunham v. Stevens.

to the mortgagee for the proceeds, reserving to himself only neces-
sary expenses. This he did for eighteen months, the business yield-
ing very small net proceeds, but the mortgagor constantly holding
out hopeful anticipations of better success. This mortgage was re-
corded as soon as made, and the mortgagor bought goods of the
attaching creditors without the mortgagee's knowledge that they
were bought on credit. At the trial the mortgagor testified that
it was understood that he was to conduct the business under the
new mortgage in the same way as under the old. But his state-
ment was contradicted by the mortgage itself, and by his own acts
in making the monthly accounts. He made no statement of that
character until the mortgagee took possession, when he invited his
creditors to attach on the ground that he had made a fraudulent
mortgage.· *Held*, that the mortgage was not fraudulent, but was a
paramount lien to that of the attachment creditors.

3. ———: ACCOUNTING. The mortgagee, who sold a stock of goods
and took a mortgage for the purchase price, which required the
mortgagor to account for the net proceeds of conducting the business,
can not be charged with the proceeds of the sale, at the suit of the
mortgagor's attaching creditors, unless the pleadings are shaped
with a view for such decree, and unless such creditors at the trial
attempt to state an account.

4. ———: BOOK ACCOUNTS. The mortgage gave the mortgagee a lien
upon the book accounts "taken upon the sale of said mortgaged
property and subsequent additions thereto by said" mortgagor. The
only subsequent additions made were of goods just sufficient to
keep up the stock and render the business a going concern. *Held*,
that it was not error to hold that the mortgage covered not only
the goods in possession of the mortgagor at the time the mortgagee
took possession, but also   the book accounts   collected by him and
by the receiver after the attachment was run.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,*
                              Judge.

AFFIRMED.

*Ellis, Reed, Cook & Ellis* for appellants.

(1) If the mortgagee knowingly permitted the mortgagor
to remain in possession of the mortgaged property, to sell the

Dunham v. Stevens.

same in the ordinary course, and use the proceeds to pay other debts and for his own purposes, and he did not pay the proceeds over to the mortgagee, as required by the terms of the mortgage, this rendered the mortgage fraudulent and void as against creditors of the mortgagor.    Russell v. Rutherford, 58 Mo. App. 550; Tennant v. Gallant, 53 Mo. App. 423; Moser v. Claes, 23 Mo. App. 420; Hisey v. Goodwin, 90 Mo. 356; Bullene v. Barrett, 87 Mo. 185.    (2) If it was agreed or understood between the mortgagor and mortgagee, at the time the mortgage was executed, that the mortgagor should sell the merchandise in the usual course of trade, and keep the proceeds of such sales for his own use, except enough to pay the mortgage debt, the mortgage is fraudulent and void. This agreement between parties may be express, or it may be implied from all the facts and circumstances in evidence.    Smith v. Ham, 51 Mo. App. 437; Helm v. Helm, 52 Mo. App. 615.    (3) A chattel mortgage is to the use of the mortgagor and therefore void if the mortgagor is permitted to substitute other property in place of that named in the mortgage; it is immaterial whether the impeaching facts are shown by the language of the mortgage or are proven by extrinsic evidence.    Whenever the facts are made to appear, the instrument is void.    Goddard v. Jones, 78 Mo. 520; State ex rel. v. Bush, 38 Mo. App. 440; Bullene v. Barrett, 87 Mo. 189; Walter v. Wimer, 24 Mo. 63; Stanley v. Bunce, 27 Mo. 269; McCarty v. Miller, 41 Mo. App. 200; Waite on Fraudulent Conveyances, sec. 351.    (4) The mortgage having contained the provision that the proceeds of all sales, less $157 a month, should be credited upon the mortgage indebtedness, and the mortgagee having left the mortgagor in possession as agent, and the net proceeds of sales having amounted to enough to more than pay off the mortgage debt with interest, the mortgage must in law, as against the mortgagor's creditors, be adjudged to have been fully paid;

Vol 160 mo—7

the mortgagee must look to his agent for reimbursement for the dissipated funds.    Waite on Fraud. Convey., sec. 355.

*Porterfield & Pence* for respondent.

(1)    The mortgage in this case is valid and sound. Metzner v. Graham, 57 Mo. 404; Hopkins v. Hastings, 21 Mo. App. 263; Nicholson v. Golden, 27 Mo. App. 132; Thompson v. Foerstel, 10 Mo. App. 296; Hewson v. Tootle, 72 Mo. 632; Hubbell v. Allen, 90 Mo. 574; Shoe Co. v. Wilson, 63 Mo. App. 326; Bank v. Powers, 134 Mo. 432; McCarthy v. Miller, 41 Mo. App. 204.    (2) It is not the right to remain in possession with power to sell in the ordinary course of business that renders a chattel mortgage fraudulent and void, but it is the right to remain in possession and to sell and convert the proceeds to the mortgagor's own use that renders the instrument void.    Bank v. Powers, 134 Mo. 445.    (3) This mortgage by its terms required all the proceeds of sales, less the reasonable expenses thereof, to be applied on the mortgage indebtedness.    "This condition has been decided to relieve chattel mortgages from the rule which ordinarily renders them void and fraudulent."    Shoe Co. v. Wilson, 63 Mo. App. 331. (4) Even if the mortgagor in possession appropriated the proceeds of the sales to his own use, this would not invalidate the mortgage unless the mortgagee knew it and consented to it. Hopkins v. Hastings, 21 Mo. App. 263; Metzner v. Graham, *supra;* Thompson v. Foerstel, *supra;* Nicholson v. Golden, 27 Mo. App. 132.    (5) The fact that the expenses in most months exceeded the limit of expenses fixed in the mortgage, does not invalidate the mortgage if the same are necessary and proper expenses in conducting the business.    Shoe Co. v. Wilson, 63 Mo. App. 326.    (6) The power in the mortgagor with the consent of the mortgagee to replenish a stock of mer-

chandise is not fraudulent, but is valid and proper. Page v. Gardner, 20 Mo. 507; Wright v. Bircher, 72 Mo. 179; Frank v. Playter, 73 Mo. 672; Rutherford v. Stewart, 79 Mo. 216; France v. Thomas, 86 Mo. 80; Petring v. Chrisler, 90 Mo. 649. (7) The mortgage in this case is not only valid between the parties, but as against creditors having notice thereof. The record of it imports notice as in ordinary cases. Shoe Co. v. Wilson, *supra;* Mitchell v. Winslow, 2 Story 630; Borden v. Croak, 131 Ill. 68; McCaffrey v. Wooden, 65 N. Y. 459; Gregg v. Sanford, 24 Ill. 17.

VALLIANT, J.—This is a controversy between creditors as to the priority of their respective liens on a stock of goods of their insolvent debtor. Plaintiff claims under a chattel mortgage; defendants under certain attachments and executions, and one of them under a mortgage. Plaintiff's mortgage being first in time is therefore first in right unless the defendants make good their charge that it is fraudulent.

The suit is in equity to foreclose the plaintiff's mortgage and incidentally to have a receiver appointed to hold and dispose of the goods as a decree may direct. The mortgagor and the attaching creditors are defendants; the former's answer is a general denial; the latter set up in their answers their respective claims and state that the plaintiff's mortgage "was originally given by the mortgagor and taken by plaintiff, and has been at all times since used by plaintiff and defendant Stevens for the purpose and with the effect to hinder, delay and defraud creditors of Stevens," and that Stevens was allowed by plaintiff to handle the goods as a retail stock of merchandise buying and selling in the usual course of trade, applying the proceeds as he saw fit and never accounting to plaintiff therefor; in the course of which he incurred the debts sued for by defendants for merchandise which was put into the

stock in trade, except one debt which was incurred before the date of plaintiff's mortgage.    Upon these allegations issue was joined.

From a preponderance of the evidence we deduce the following as the facts:

In 1893 the plaintiff was doing a retail business in his own name at 114 West 8th street, Kansas City, dealing in stationery and engineers' supplies; Stevens was in his employ as clerk. Negotiations between them resulted in plaintiff's selling the stock and business to Stevens for $400 cash, and a note and a mortgage on the stock for $5,149, dated October 1, 1893. The note was payable in installments of $50 monthly.    The mortgage was duly recorded and the plaintiff went to Philadelphia to live, leaving defendant Stevens in possession carrying on the business.    By the terms of that mortgage it seems that Stevens was allowed free control of the business, buying and selling in the usual course of trade without being required to render any account to the plaintiff.    In the latter part of October, 1894, the plaintiff having been advised that his mortgage was obnoxious to the Missouri statutes in regard to fraudulent conveyances, returned to Kansas City and demanded a new mortgage for the remainder of the debt which then amounted to $4,835.06; thereupon a new note for that amount and the mortgage in question to secure it were executed, dated November 1, 1894.    The new note was payable $35.06 on its date and in $50 monthly installments thereafter, with interest graduated at four per cent per annum for the first year, five for the next, and so on increasing one per cent each year until it should reach eight per cent, the maker having the privilege of increasing the amount of the monthly payments if he so desired.

The mortgage covered the stock of merchandise, store, fixtures and trade appliances and all additions thereto and con-

tained a power of sale by the mortgagee in case of default. It contained also this clause: "Said party (meaning the mortgagor) is to have the privilege of selling said stock of goods in the usual course of trade and business, but said party of the first part shall on the first day of each month from and after the date thereof, account to said second party for the proceeds of said sales less the actual and reasonable expenses thereof, which shall in no case exceed the sum of one hundred and fifty seven dollars for any one month, and which proceeds are to be credited upon said indebtedness and upon said payments." In other respects there was nothing unusual in the provisions of the mortgage.

This mortgage was duly recorded and the plaintiff returned to Philadelphia and remained there until about the date of the commencement of this suit, August, 1896.

Stevens testified that when the new mortgage was given plaintiff told him it would make no difference in the course of their dealings; he would go on just as he had done under the first mortgage; but the plaintiff denied that there was any understanding or agreement other than that expressed in the mortgage. In fact the course of dealing was different under the second mortgage from what it had been under the first. Under the first mortgage Stevens paid the monthly installments of $50 to plaintiff but rendered no account of his sales. Under the second mortgage, the one in question, he rendered monthly accounts of the business, showing sales, purchases, expenses, collections, etc., but from its date to the commencement of this suit, November, 1894, to August, 1896, he paid only $85 on the debt. He wrote frequent letters to plaintiff explaining his inability to pay, indicating that it was the unsatisfactory condition of the business. The monthly statements rendered showed that with the selling and buying the stock in trade was kept approximately to the value it was on

November 1, 1894, never quite up to that value and never much below it, the lowest being $4,470.34, October 1, 1895, the highest $5,090.28, January 1, 1896, and $4,686.26, May 1, 1896, which was the last rendered. The statements showed the expense of running the business, and usually the expense items aggregated more than the limit, $157, specified in the mortgage, but there was nothing to indicate that they were extravagant or unnecessary.

There were eighteen of these statements in evidence which showed sales aggregating $10,345.40, purchases $10,071.79, expenses $3,179.29. The average of monthly sales was about $575, that of the purchases about $560, and that of the expenses about $175. The apparent discrepancy in these figures, showing as they do the sales and purchases nearly equal, leaving the stock on hand May 1, 1896, $4,686.26, while over $3,000 had been taken out for expenses, is doubtless attributable to the fact that the sales are tabulated at a discount of 30 per cent, indicating the difference between the cost and the selling price, which discount is shown on the face of the statements, and it aggregates somewhat over $3,000. The statements and letters of Stevens accompanying them were sufficient to induce the plaintiff to believe that the business was not earning more than the cost of conducting it with reasonable economy. Plaintiff made requests on Stevens for payments and had a friend, Mr. Eoff, in Kansas City, to call on him several times to try to get payments and to see how the business was going, but Stevens always represented that the business was making nothing and he could not pay, but hoped for an improvement. Plaintiff knew that Stevens was buying goods but did not know he was buying on credit, supposed that he was buying with the proceeds of his sales to keep up the stock which was the understanding between them. Stevens testified that he deposited the proceeds of his sales in bank to his own credit

and checked it out as he desired, and bought the goods on credit, but the evidence does not show that plaintiff knew that.

In the summer of 1896 plaintiff came to Kansas City to look after the matter and told Mr. Stevens that he would have to take possession under his mortgage. Then there was some negotiation between them looking to the formation of a stock company to take the business, but as plaintiff did not propose to allow Stevens as much of the stock as he thought he ought to have the negotiation failed, and Stevens notified his other creditors, and instigated the suits brought by them under which the attachments, etc., were issued and the goods seized by the constable. Then the plaintiff instituted this suit, under which a receiver was appointed, who relieved the constable and took charge of the goods, books, etc. Upon the trial the court decreed the plaintiff's mortgage valid and a prior lien on the goods, book-accounts, etc., and from that decree the other creditors have appealed.

I.    There is not a great deal of difference between the counsel in this case concerning the principles of law discussed.

If the mortgage in question was contrived for the use and benefit of the mortgagor, if it was designed to enable him to hold off his creditors while he carried on his business, it was fraudulent and void.

If it should be apparent on the face of such a mortgage that the mortgagor was to remain in possession and sell the merchandise in the usual course of trade without accounting for the proceeds, the court would judge it to be for his use and void as to his creditors without other evidence of a fraudulent purpose. And though it should be fair on its face, yet, if evidence extrinsic shows that it was executed for such a purpose, it would, after the fact is found, be adjudged fraudulent.

But a mortgage of a stock of goods in trade is not rendered

fraudulent by the fact that the mortgagor is to remain in possession and sell in the usual course of trade if as in this case he is required to account to the mortgagee for the proceeds of his sales and apply the same to the mortgage debt. These principles have been so clearly pointed out by this court in numerous decisions that it is unnecessary now to enter into a discussion of them; we refer to only a few of the decisions: Hewson v. Tootle, 72 Mo. 632; Goddard v. Jones, 78 Mo. 518; Bullene v. Barrett, 87 Mo. 189; Hubbell v. Allen, 90 Mo. 574; Bank v. Powers, 134 Mo. 432.

The question is, do the provisions on the face of this mortgage or the facts disclosed by the extrinsic evidence, condemn it as a fraud in the light of the law as above stated?

It is not contended that the mortgage is fraudulent by its own terms, because, while it provides that the mortgagor is to remain in possession and sell in the ordinary course of trade, yet it also requires him to account to the mortgagee for the proceeds to be applied to the mortgage debt, reserving only necessary expenses. But the contention is that the facts surrounding the transaction show that the mortgage was really contrived for the benefit of the mortgagor, notwithstanding its fair face.

If any such understanding or agreement existed it was so at the date of the mortgage, because the plaintiff left for Philadelphia immediately afterwards and there is no pretense that there was any new or additional agreement between the parties after that. The subsequent acts of the parties are, therefore, to be considered only as they may justify an inference that some such agreement existed *ab initio*. In considering the conduct of the parties for this purpose we must take into view all the circumstances. In the first place there was no relation between the parties to indicate that there was any motive to actuate either of them other than that which

influences an ordinary business transaction; and in the next place the mortgage was given to secure payment of the purchase price of the very property which it covered. It was a sale of the business by the plaintiff for a sum estimated to be the fair value of the stock in trade to the defendant Stevens who was a man of no means, but whose ability to conduct the business the plaintiff had had an opportunity to observe, the terms being such that it might be reasonably contemplated that the purchase price could be paid by retail sales of the goods, devoting all the proceeds to that end except what were necessary to keep the business going. If that contract had been performed on the part of the debtor according to its plain terms there could be no suspicion of fraud about it. The mortgage was immediately placed on record which act signified that the parties had nothing to conceal as to its terms. It is usual to say in legal parlance that the recording of a mortgage is constructive notice to all the world, but it would perhaps be not going too far to say in the light of the daily experience in commercial and business circles that the record of such a mortgage gives not only constructive but generally leads to actual notice. What merchant in this day can give a mortgage on his stock in trade and not have the fact noted and published by every commercial agency in the country? And who gives credit to a merchant without inquiring into his commercial rating?

The only ground upon which the other creditors base their suspicion of fraud is the manner in which their debtor conducted the business with what they construe to have been the acquiescence of the plaintiff. But there is nothing to show the plaintiff's acquiescence in any wrongdoing of the mortgage debtor if he did any wrong. His letters were all excuses for non-payment and hopeful anticipations. The most serious complaint that the other creditors are justified in making

against the plaintiff is that he did not sooner suspect something wrong and move to foreclose his mortgage. It is rather a curious fact in this case that the only witness who attempts to give a shading of fraud to the conduct of defendant Stevens is the defendant himself. He testified that it was understood between them that he was to conduct the business under the new mortgage in the same way as under the old, but the plaintiff's evidence contradicts him in that and the facts contradict him, for it appears that under his mortgage he rendered the monthly statements that have been mentioned made up under direction of Mr. Eoff as to form, giving items necessary to a complete understanding, nothing of that kind being required or done under the first mortgage. It was not until the plaintiff came to Kansas City in the summer of 1896 and demanded possession under his mortgage that any fraud was suggested and then it was by defendant Stevens inviting his creditors to attach him on the ground that he had fraudulently conveyed his property.

The learned chancellor who had the parties before him found that the charge of fraud was not sustained and we have no doubt his finding was right.

II. It is suggested in the brief of appellants that the plaintiff should be charged in this transaction with the proceeds of the sales made by defendant Stevens while the business was going, on the theory that Stevens was the plaintiff's agent in the sale of the goods. The pleadings of the defendant were not shaped with a view to such a phase of the decree and did not tender any such issue. Besides the defendants made no attempt at the trial to state such an account. The sole issue was in relation to the validity of the plaintiff's mortgage.

III. The decree gives the plaintiff not only the first lien on the goods, but also on the book-accounts, etc., to be collected

by the receiver, and this is assigned as error. The terms of the mortgage require the proceeds of Stevens's sales of the mortgaged goods to be applied towards the payment of the mortgage debt. The only book-accounts and other evidences of debt that the decree gave the plaintiff a first lien upon, are "those taken upon the sale of said mortgaged property and subsequent additions thereto by said Stevens."

The only subsequent additions that were made were of goods just sufficient to keep up the stock and render the business a going concern. There is no error in the decree in that respect.

Upon the whole we think the circuit court took the correct view of the case and the judgment is affirmed. All concur.