[No. 25441. Department One. May 13, 1935.]

SPOKANE SECURITY FINANCE CORPORATION, *Respondent,* v. FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellant.*[1]

[1]Reported in 44 P. (2d) 1036.

*Williams & Williams,* for appellant.

*G. E. Lovell,* for respondent.

MAIN, J.—This action is based upon an indemnity bond. The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to recover. Judgment was entered against the defendant in the sum of $350.10, from which it appeals.

The respondent, Spokane Security Finance Corporation, is engaged in the business of making mortgage loans upon personal property in the city of Spokane. Under these loans, from time to time, the goods, wares and merchandise covered by the mortgage would be repossessed and become the property of the respondent.

One William W. Philbrick, in the same city, operated a store for the sale of second-hand goods. June 9, 1932, the respondent and Philbrick entered into a contract by which the latter was to sell, through his store, personal property delivered to him by the respondent. Under this agreement, different lots of personal property were delivered; and in accordance with the contract, there was a list price at which the different items should be sold, and the profit of Philbrick was anything he might receive from the sale of the property above the list price mentioned.

The contract also provided that different lots of property would be delivered from time to time. When the property had been delivered by the respondent to Philbrick at his store, it would be given a lot number, and each piece therein a separate number. As the property was sold, the respondent was to receive, within three days after the sale, the amount that was coming to it.

On the same day that the contract was entered into,

the appellant, Fidelity and Deposit Company of Maryland, gave the bond upon which this action was based, and which provided that it would pay to the respondent the amount of any direct loss of Philbrick occasioned by "any larceny or embezzlement" during the period for which the bond was written.

Under the agreement, the respondent delivered to Philbrick's store a number of different lots of property, with the list price at which each item should be sold. Philbrick had property belonging to himself in the store, upon which there was a chattel mortgage held by the respondent. He had also property which subsequently was sold at a tax sale and purchased by the respondent with its own funds. The respondent received a bill of sale for this property, and it was then listed in the store as its property with a lot number, and each item was given a piece number as other property which had been delivered to the store by the respondent. The operations continued under the contract until sometime in March, 1933, when the respondent made a claim against the bond because Philbrick was selling, or had sold or disposed of, out of the three different groups of property, articles for which he had not accounted.

As stated in the appellant's brief, the principal "question involved on the appeal is the sufficiency of the evidence to sustain the judgment."

We shall first take up the group or lot of property which the respondent had placed in the store after it had been repossessed. While there is some conflict in the evidence, the weight thereof sustains the trial court's view that Philbrick had sold, or disposed of, certain items in this group and had not remitted for the same.

With reference to the property acquired at the tax

foreclosure, as already stated, it was purchased by the respondent with its own funds. It received a bill of sale for the property, which was, as other property, left at the store by the respondent, given a lot number, and the different articles a piece number. The appellant says that, notwithstanding this, the respondent purchased the property for and on account of Philbrick, and that respondent held it only as trustee. While there is some evidence that would sustain this contention, we are of the view, after considering all of the evidence, that the trial court drew the correct inference therefrom. The status of the property covered in the tax foreclosure became, in effect, the same as that which the respondent had previously delivered to the store and which it had taken by repossession from various mortgagors.

With reference to the property owned by Philbrick and upon which the respondent held a chattel mortgage, it may be admitted that, if this were the sole relation between the parties, no recovery could be had for items sold out of this group and not accounted for. In other words, a mortgagor who sells property contrary to the provisions of the mortgage, while he may be guilty of selling mortgaged property, is not guilty of larceny or embezzlement. In addition to the mortgage, however, there was an agreement between the parties that the mortgaged property should be sold, and, as sold, what was received from the purchase thereof should be paid over to the respondent.

Upon the question as to whether there was such an agreement, the evidence is in dispute. In sustaining a recovery upon the items in this group, the trial court necessarily found, in effect, that the parties had made such an agreement, and with this we agree. Inquiry must then be directed to whether an agreement of this

kind places the property, in legal effect, in the same status as the other two groups.

Rem. Rev. Stat., § 2601 [P. C. § 8944], provides that every person having property in his possession belonging to another, who, with intent to deprive or defraud the owner thereof,

". . . or a person authorized by agreement . . . to hold such possession, custody or control, . . . shall secrete, withhold or appropriate the same to his own use,"

shall be guilty of larceny. Where the mortgagee authorizes the mortgagor of personal property to sell the same and account to the mortgagee for the proceeds, the mortgagor becomes the agent of the mortgagee for the purposes of sale and collection.

In *Martz v. Big Horn Glass Co.*, 269 S. W. (Mo. App.) 697, it was said:

"(Even under Missouri law a chattel mortgage is valid which allows the mortgagor to remain in possession and sell, but only to apply the proceeds on the mortgage debt. *Rock Island Natl. Bank v. Powers,* 134 Mo. 432, 34 S. W. 869, 35 S. W. 1132; *Dunham v. Stevens,* 160 Mo. 95, 60 S. W. 1064). And where the mortgagor does this, his status is that of agent of, or trustee for, the mortgagee. 11 C. J. 578; *Benedict v. Renfro,* 75 Ala. 121, 51 Am. Rep. 429; *Conklin v. Shelley,* 28 N. Y. 360, 84 Am. Dec. 348; *National Citizens' Bank v. Ertz,* 83 Minn. 12, 85 N. W. 821, 822, 53 L. R. A. 174, 85 Am. St. Rep. 438; *Bynum v. Miller,* 89 N. C. 393; *Dayton v. People's Savings Bank,* 23 Kan. 421."

In *National Citizens' Bank v. Ertz,* 83 Minn. 12, 85 N. W. 821, 53 L. R. A. 174, 85 Am. St. 438, it was said:

"The sale was made in pursuance of an agreement between Cassiday, mortgagor, and plaintiff, mortgagee, that the mortgaged property might be sold and the proceeds turned over to the latter. The sale and application of the proceeds as agreed upon were perfectly proper, if the parties saw fit to make such an

agreement. Its legal effect was to substitute the mortgagor, Cassiday, as the agent of the mortgagee, to do exactly what the latter had a right to do; that is, to sell the mortgaged property, and thus devote it to the payment of the mortgage debt. It was really a sale by the mortgagee, and legally was precisely as if the mortgagee had taken possession and placed a third person in charge, as agent, to sell the property and account for the proceeds. *Conklin v. Shelley,* 28 N. Y. 360, 363; *Brackett v. Harvey,* 91 N. V. 214, 221; *Dayton v. Peoples,* 23 Kan. 421.''

The statute of this state referred to makes one guilty of larceny who has money or property in his possession as agent of another and appropriates that money or property to his own use. In this case, as already pointed out, Philbrick, the mortgagor, was authorized to sell the mortgaged property and turn the proceeds over to the respondent. He did not account for the proceeds in accordance with the agreement. If he was the agent of the respondent to sell and collect the proceeds, as he was, under the authorities cited he would be an agent within the contemplation of the statute. In the case of *Forbish v. State,* 49 Tex. Crim. Rep. 486, 93 S. W. 1029, the contrary view was taken. In that case, however, there was no mention of a statute such as that of this state, and there was no reference to the authorities. We think that case is not supported by the authorities, and the better reasoning is against it.

If, as we have found in this case, Philbrick was the agent of the respondent to make the collection and failed to account for the proceeds in accordance with the agreement, he would be guilty of larceny under the statute, and his defalcations would be covered by the bond. It must be remembered that, there being an agreement to sell, there would be no larceny or embezzlement of the personal property covered by the mortgage, because, when the property under the mortgage

was sold, in accordance with the agreement the lien of the mortgage upon the property would be extinguished.

The judgment will be affirmed.

MILLARD, C. J., GERAGHTY, TOLMAN, and BEALS, JJ., concur.